HAWTHORNE, Justice.
 

 Harold F. Mills and Lena Vernaci were convicted of the crime of gambling denounced by Article 90 of the Criminal Code. Mills was sentenced to pay a fine of $500 and to serve one year in the parish prison, and in default of the payment of fine to serve six additional months. Lena Vernaci was sentenced to pay a fine of $305 and to serve six months in the parish prison.
 
 *765
 
 and in default of the payment of fine to serve three additional months.
 

 For a proper understanding of the numerous bills of exception reserved we shall briefly summarize some of the facts in this case. In the early morning of October 22, 1954, Lena Vernaci was arrested by two police officers while she was alone in a room that she rented in a house at 1229 Simon Bolivar Street in New Orleans. At the time of the arrest the room contained a stove, table, chair, and light, but no other furniture. The arresting officers seized a large amount of lottery paraphernalia lying on the table, including two lottery lists giving the numbers drawn from the lottery wheel on Thursday, October 21, by a lottery company conducting lotteries called “Bag of Silver” and “Bag of Gold”; receipts to be issued to players; and record sheets showing plays or bets made by various players, some of which bore the date of October 22. During the trial a woman named Hattie Tucker who lived at 1229 Simon Bolivar Street testified without objection that Lena Vernaci had used the room at that address for “writing lottery”. Also, testimony and exhibits were offered by the State to prove that Harold Mills was the owner and operator of Gold and Silver, a lottery company, and that Lena Vernaci was a lottery vendor for Mills on the date charged in the information.
 

 Article 90 of the Criminal Code, R.S. 14:90, provides:
 

 “Gambling is the intentional conducting, or directly assisting in the conducting, as a business, of any game, contest, lottery, or contrivance whereby a person risks the loss of anything of value in order to realize a profit. * * * ”
 

 The pertinent part of the bill of information charging these defendants with violating this statute reads:
 

 “Harold Mills and one Lena Vernaci * * * did commit the crime of gambling as defined by R.S. 14:90 in that each did unlawfully and intentionally conduct and directly assist in the conducting, as a business, at 1229 Simon Bolivar in the City of New Orleans, of a lottery, whereby a person risked the loss of a thing of value in order to realize a profit * * *.”
 

 Mills and Vernaci' each filed an application for a bill of particulars. When their applications were denied by the trial judge, each defendant reserved a bill of exception, and Vernaci also reserved bills to the overruling by the trial judge of her demurrer and motion to quash the information. These bills are designated as Mills Bill No. 1 and Vernaci Bills Nos. 1, 2, and 3.
 

 In their motions for a bill of particulars these defendants asked the State to tell each defendant whether he or she was charged with conducting and operating a lottery, or only with assisting in the operation of a lottery; whether lottery operations were conducted at 1229 Simon Bolivar Street by each; what lottery operations each
 
 *767
 
 performed or took part in; where the lottery-drawings took place; and other details with reference to the lottery operations.
 

 The answer of the State, which the trial court deemed sufficient, informed the defendants that each was charged in the bill of information with conducting
 
 and
 
 assisting in conducting a lottery under the authority of R.S. 15 :222, and that they were both charged as principals under the provisions of R.S. 14:24.
 

 R.S. 15 :222 provides that several distinct offenses, disjunctively enumerated in the same criminal statute, may be cumulated in the same count when it appears that they are connected with the same transaction and constitute but one act, but in that case they must be charged conjunctively. Under R.S. 14:24 all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
 

 The primary function of a bill of particulars is to fully inform the accused of the nature and cause of the accusation against him so that he can adequately prepare his defense. However, a defendant in a criminal case is not entitled to particulars as a matter of right. The granting or refusal of such a bill is within the sound discretion of the trial judge, and his ruling will not be disturbed unless it is manifestly erroneous. Arts. 235 and 288, La.Code Cr.Proc., R.S. 15:235, 288; State v. Labat, 226 La. 201, 75 So.2d 333; State v. Simpson, 216 La. 212, 43 So.2d 585; State v. Poe, 214 La. 606, 38 So.2d 359; State v. Sheffield, 201 La. 1055, 10 So.2d 894; State v. Ezell, 189 La. 151, 179 So. 64.
 

 In criticizing the denial by the trial judge of her motion for a bill of particulars, appellant Vernaci in brief in this court for the first time urges that she was entitled to know before trial the kind of lottery involved in the charge against her. We note, however, that she did not seek this information in her motion for a bill of particulars, and even if she had, it would be without merit. The word “lottery” as used in Article 90 of the Criminal Code and in the bill of information in this case is neither vague nor indefinite. It is found in our state Constitution, Article 19, Section 8, which provides that “Lotteries and the sale of lottery tickets are prohibited in this State”. Also, it is a commonplace word, and every layman knows exactly what is meant by the term “lottery”.
 

 The other information sought by these defendants in their application for particulars was an effort on their part to obtain through this bill the evidence which the State expected to offer on the trial of the case. It goes without saying that such a motion cannot be used for this purpose. The State is not required to reveal in advance of the trial the facts on which it will rely in seeking a conviction.
 

 
 *769
 
 We think that by the bill of information these defendants had been sufficiently informed of the nature and cause of the accusation against them to be able adequately to prepare their defense, and that therefore the trial judge did not commit error in denying their motion for particulars. Likewise there is no merit in Vernaci’s demurrer and motion to quash. In these motions she erroneously contends that the bill of information filed against her is vague and indefinite and does not inform her of the nature and cause of the accusation against her. The information in the instant case charges the precise gambling operation in which these defendants were allegedly involved, that is — a lottery; it gives the exact date of the offense and the house number of the place where the offense took place; and in addition it tracks the language of Article 90 of the Criminal Code. Thus it fully meets the test which this court has laid down for determining the sufficiency of an information, that is: It fully informs the court of the offense charged so that it might properly regulate the evidence sought to be introduced; it informs the accused of the nature and cause of the offense with which he is being charged; and it is sufficient on its face to support a plea of former jeopardy. State v. Scheuering, 226 La. 660, 76 So.2d 921, and authorities therein cited.
 

 Mills Bills Nos. 2, 3, 5, 8, and 12 were submitted to this court without oral argument or discussion in brief, and without citation of authorities. Under this state of facts we would be justified in considering these bills abandoned, and probably will do so under similar circumstances in the future. In the instant case, however, we have examined each of these bills and find no merit in any of them.
 

 Mills Bill No. 4 is not mentioned or discussed in brief filed by him in this court, and apparently this bill has been abandoned. It was reserved in connection with certain questions propounded to a witness the State was seeking to qualify as an expert on lottery operations, and to the ruling of the judge permitting this witness to testify as an expert. It is well settled that the trial judge determines whether witnesses offered as experts are entitled to be heard in that capacity, and his ruling will not be disturbed on appeal where no error appears. Art. 466, La.Code Cr.Proc., R.S. 15:466; State v. Carter, 217 La. 547, 46 So.2d 897; State v. Nicolosi, 228 La. 65, 81 So.2d 771.
 

 Mills Bills 6, 9, 10, 11, 14, 15, and 16 were reserved to the trial judge’s permitting the State to file in evidence over the defendant’s objection State Exhibits 8 through 14.
 

 Exhibits 8 and 9 are quarterly reports made to the Louisiana Department of Labor, Division of Employment Security, pursuant to the provisions of the Louisiana Unemployment Compensation Law, R.S. 23:1471-
 
 *771
 
 1713. Exhibit 8 is for the third quarter of the year 1954, and Exhibit 9 is for the fourth quarter of that calendar year. These reports are made on printed forms and show the employer’s name and business, and give the names, social security numbers, and wages of employees. Both of these documents are quarterly reports for Harold F. Mills, owner of “Gold and Silver”, and list Lena Vernaci as one of his employees. According to the testimony in this case, these reports were prepared by an accountant employed by Mills, under Mills’ direction and by his authority.
 

 Exhibits 10 through 13 are tax returns and applications for registry made to the federal government pursuant to the Federal Wagering Tax Law, 26 U.S.C.A. § 4401 et seq., for the period July 19, 1954, to June 30, 1955, which period of time of course included the date of the offense charged in these proceedings. These returns show that the taxpayer is Harold F. Mills and that his business is “Gold and Silver”, and are signed by Mills. These returns
 
 list
 
 Lena Vernaci as one of the employees of Mills. The returns show that Mills was engaged in the business of accepting wagers on his own account, and show the amount of wagers accepted during each month of the period covered and the amount of tax due to the federal government.
 

 Exhibit 14 is a certificate by the custodian of the original returns stating that the photostats of these returns are true copies.
 

 The Federal Wagering Tax Law pursuant to which these returns were made requires any person engaged in gambling to pay a $50 occupational tax, file a registration form listing his name and address and those of his employees, and pay taxes on the gross amount of wagering done. See 26 U.S.C.A. §§ 4411, 4412, 4401
 

 The contention was made in the lower court that by filing these state and federal reports Mills was granted an implied promise of immunity from prosecution for gambling. In brief filed in this court Mills does not urge this contention, evidently because there is no merit in it. There is nothing in the law under which these documents were filed that carries any implication that compliance will be accompanied by an immunity from prosecution. Moreover, the federal statute specifically provides that the payment of any tax imposed thereby shall not be held to exempt any person from any penalty provided by a law of any state. See 26 U.S.C.A. § 4422. See also Irvine v. People of State of California, 347 U.S. 128, 74 S.Ct. 381, 98 L.Ed. 561.
 

 Appellant argues at length in brief in this court, however, that these documents were improperly admitted in evidence because the use of such evidence in a criminal case violates the constitutional rights and guarantees against self-incrimination afforded by the Fifth Amendment of the United States Constitution and Ar-
 
 *773
 
 tide 1, Section 11, of the Louisiana Constitution.
 
 [1]
 

 This contention has been fully answered by the United States Supreme Court in United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754; Irvine v. People of State of California, 347 U.S. 128, 74 S.Ct. 381, 98 L.Ed. 561, and Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475.
 

 In the Kahriger case it was contended that the wagering tax is unconstitutional because it is a denial of the privilege against self-incrimination guaranteed by the Fifth Amendment to the federal Constitution. In answer the Supreme Court of the United States said [345 U.S. 22, 73 S.Ct. 515]:
 

 “Assuming that respondent can raise the self-incrimination issue, that privilege has relation only to past acts, not to future acts that may or may not be committed. 8 Wig-more (3d ed., 1940) § 2259(c). If respondent wishes to take wagers subject to excise taxes under § 3285, supra, he must pay an occupational tax and register. Under the registration provisions of the wagering tax, appellee is not compelled to confess to acts already committed, he is merely informed by the statute that in order to engage in the business of wagering in the future he must fulfill certain conditions.”
 

 In the Irvine case the accused was prosecuted in a California state court for violating the state gambling law. Against objection by the accused a federal wagering tax stamp bearing his name and address and his return to the collector under the federal law were introduced into evidence. The accused was convicted, and the United States Supreme Court granted certiorari. The conviction was affirmed. In the course of the opinion the court said [347 U.S. 128, 74 S.Ct. 381] :
 

 “Upon his arrest, petitioner had on his person a federal wagering tax stamp bearing his name, home address and the date, November 5, 1951. Against objection it and other documentary evidence from the office of the United States Collector of Internal Revenue was received to show petitioner’s application for the wagering tax stamp and his return to the Collector under the federal law. These documents were made pursuant to the Federal Act imposing wagering taxes, 65 Stat. 529, 26 U.S.C. (Supp. V) § 3285 et seq., 26 U.S.C.A. § 3285 et seq., held constitutional by this Court in United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754. The claim is made that it was error as a matter of federal law to admit this evidence and also that payment of the federal tax resulted in a federal license to conduct the wagering business. This statute does not
 
 *775
 
 make such records or stamps confidential or privileged but, on the contrary, expressly requires the name and place of business of each such taxpayer to be made public. 53 Stat. 395, 26 U.S.C. § 3275, 26 U.S.C.A. § 3275. Petitioner’s contentions are without substance or merit in view of the express provisions of the statute that payment of the tax does not exempt any person from penalty or punishment by state law and does not authorize commencement or continuance of such business. 53 Stat. 395, 26 U.S.C. § 3276, 26 U.S.C.A. § 3276; 65 Stat. 531, 26 U.S.C. (Supp. V) § 3292, 26 U.S.C.A. § 3292.”
 

 In a footnote to this case the court commented :
 

 “Petitioner's question number 2, which challenges the State’s use of ‘compelled evidence’ obtained under the federal wagering statute, is answered in United States v. Kahriger * *
 

 The Lewis case, decided in 1955, is particularly in point. An information was filed in a municipal court of the District of Columbia charging Lewis with violation of the Federal Wagering Tax Law. The United States Supreme Court held on certiorari that the act as applied to petitioner in the District of Columbia did not contravene the Fifth Amendment’s prohibition against compulsory self-incrimination. In the course of this opinion it was stated [348 U.S. 419, 75 S.Ct. 417]:
 

 “If petitioner desires to engage in an unlawful business, he does so only on his own volition. The fact that he may elect to pay the tax and make the prescribed disclosures required by the Act is a matter of his choice. There is nothing compulsory about it, and, consequently, there is nothing violative of the Fifth Amendment. If he does not pay the occupational tax, proceeds to accept wagers, and is prosecuted therefor, as in this case, he cannot be compelled to testify and may claim his privilege. The only compulsion under the Act is that requiring the decision which would-be gamblers must make at the threshold. They may have to give up gambling, but there is no constitutional right to gamble. If they elect to wager, though it be unlawful, they must pay the tax.”
 

 In support of their position appellants cite and rely on Boynton v. State, Fla., 75 So.2d 211, decided by the Supreme Court of Florida in 1954. The Florida Supreme Court, however, decided that case before the decision of the United States Supreme Court in the Lewis case, supra, and made no mention of the Irvine case.
 

 Of course the United States Supreme Court in the above cases was interpreting the Fifth Amendment to the United States Constitution and dealing with returns made to the U. S. Treasury Department under federal law. However, the reasoning used in these three cases is applicable here, and we are of the opinion that the introduction in evidence in the instant case of the quarterly reports made by Mills to the Louisiana Department of Labor and of the federal
 
 *777
 
 wagering tax returns in no way violated defendants’ privilege against self-incrimination guaranteed to them by Article 1, Section 11, of our state Constitution. See 14 Am.Jur., “Criminal Law”, Secs. 144 and 155.
 

 It is also argued in this court by counsel for appellants that these state and federal reports were improperly admitted in evidence because they are privileged and confidential.
 

 Since it is the duty of every person to give all available evidence to a court, the privilege not to give testimony or to keep documentary evidence out of court is always strictly construed. See Wigmore, Evidence, v. 8, sec. 2285 (3rd ed. 1940). In Louisiana privileges are ordinarily granted by statute. See, e. g., R.S. 15 :461 (husband and wife privilege) ; R.S. 15:476 (physician-patient privilege).
 

 As to the state records, appellants contend that their privilege is granted by R.S. 23 :1660, which is a part of the law requiring that these reports be filed. The clause of this section upon which appellants rely provides:
 

 “ * * * Information thus obtained, or obtained from any individual pursuant to the administration of this Chapter except to the extent necessary for the proper administration thereof, shall be held confidential and shall not be published or be open to public inspection (other than to public employees in the performance of their public duties) in any manner revealing the individual’s or employing unit’s identity * * *»
 

 The trial judge in his per curiam says :
 

 “It will be noted that the statute excepts
 
 ‘public employees in the performance of their public duties’
 
 from those against whom the prohibition of disclosure is aimed.
 

 “Certainly the District Attorney of the Parish of Orleans, is a
 
 ‘public employee’.
 
 In the use of these exhibits in the present case, he was engaged in the performance of his
 
 ‘public duties’.”
 

 Although the statute expressly provides that information given in the reports and returns is to be held confidential and shall not be published or open to public inspection, we think, as did the trial judge, that the district attorney in the performance of his public duties falls within the exception provided in the statute. As we have heretofore pointed out, the privilege to keep documentary evidence out of court is to be strictly construed, and in the absence of an express and clear provision in a statute giving this privilege it will not be recognized. An example of such a clear and explicit provision is R.S. 22:1120(B). That statute makes any communication from an insurer to the Secretary of State a privileged communication which “shall not be used as evidence in any court action or proceeding”. See also R.S. 15:461, 15:475, 15:476, 15:477. There is no such provision in the statute upon which the appellants rely, and therefore they have no privilege.
 

 
 *779
 
 The State in brief informs us that the purpose of the provisions of R.S. 23:1660 is perfectly clear when this section is read as a whole, saying:
 

 “ * * * The State wishes to protect employers and their employees from inter-meddlers or competitors who would seek to use public records for their own private purposes. On the other hand the State wishes to make the records usable by public officials for public purposes. That is exactly what the act accomplishes in clear terms.”
 

 Appellants point out no federal statute providing that the federal tax returns are confidential and privileged, and we know of none. On the contrary, it appears that these returns are open to public inspection under the provisions of 26 U.S.C.A. § 4401 et seq.
 

 Another objection made by appellants to the offering in evidence of these documents is that they are in substance confessions or admissions containing inculpatory statements and as such were improperly admitted in evidence without the proper foundation’s being laid for their admissibility. In short, appellants contend that before these documents could be legally introduced in evidence, the State was obliged to show that they were freely and voluntarily given under the provisions of Article 451 of the Code of Criminal Procedure and the jurisprudence of this court.
 

 The tax returns and reports filed in evidence by the State in this case are required by law to be made to a governmental agency to provide the agency with suitable information of transactions which are subject to governmental regulation. They cannot be considered confessions or admissions containing inculpatory statements as these terms are used in Article 1, Section 11, of the Louisiana Constitution, Article 451 of the Code of Criminal Procedure, and in the jurisprudence of this court dealing with incriminating statements for which a predicate must be laid before their admission in evidence.
 

 As said above, the United States Supreme Court has reasoned that the constitutional prohibition against self-incrimination is not applicable to such documents. See Kahriger, Irvine, and Lewis cases, supra. Under that reasoning we hold that the constitutional provision prohibiting the use of confessions unless freely and voluntarily made is likewise without application to such evidence.
 

 It was not the intention of the drafters of the Constitution or the Criminal Code of this state to require that quasi-public records such as these, filed voluntarily with a governmental agency pursuant to law, must be affirmatively shown to have been freely and voluntarily given before being introduced in evidence. In other words, we hold that the provisions of the Constitution and statutes of this state requiring the predicate for the admissibility of a confession to be
 
 *781
 
 first laid are without application to the documents in the instant case.
 

 Appellants also objected to the admissibility of these documents because they relate to dates other than that of the offense charged in the information. They make no argument in support of this objection in brief. This is understandable, as the objection was trivial. The crime here charged is gambling as a business, and this is a continuing offense. The documents were relevant to establish this fact. See infra.
 

 Appellants also objected to the admissibility of the federal tax reports on the ground that since they were photostats of the originals, they were not the best evidence. No argument is made in brief to rationalize this objection, and indeed none could be made. The State points out, and the trial judge tells us in his per curiam, that the original records were not available under federal regulations. The documents offered, however, were certified by the custodian of the originals, an officer of the United States Treasury. Moreover these photostatic copies were compared with the originals, and there was testimony to show that they were identical. Such photostatic copies were the best evidence available, and consequently were admissible under Article 436 of the Code of Criminal Procedure, R.S. 15:436. See also R.S. 15:457; Wharton on Criminal Evidence (12th Ed.), Sec. 591.
 

 Mills Bill No. 7 was reserved to a question put to State’s witness Moran, who was asked to identify certain federal wagering tax returns. The witness replied that he had not prepared the documents and knew nothing about them. According to the trial judge’s per curiam the witness did not identify the documents, and the question was withdrawn. This bill therefore presents nothing for us to review.
 

 Mills Bill No. 13 and Vernaci Bill No. 5 were reserved to the admission in evidence of State Exhibits 1 through 6, which are the lottery paraphernalia seized by the police officers at the time of the arrest of the defendant Vernaci. As we have already pointed out in our summary of the important facts in this case, these lottery paraphernalia included a list giving the results of a lottery drawing for Thursday, October 21, showing the numbers drawn from the lottery wheel on that date, as well as other paraphernalia, some dated and some undated.
 

 Mills takes the position that these exhibits were improperly filed in evidence under a bill of information charging the defendants with gambling on October 22. The answer to this contention is that these defendants are charged with gambling as a business which by its very nature is a continuing transaction. Thus this evidence was properly admitted to establish the charge of gambling as a business on October 22.
 

 [2]
 

 See Art. 446, La.Code Cr.Proc.;
 
 *783
 
 State v. Behan,
 
 113
 
 La. 754, 37 So. 714; City of Shreveport v. Marx, 148 La. 31, 86 So. 602; State v. Wilde, 214 La. 453, 38 So.2d 72; State v. Jouvet, 224 La. 15, 68 So.2d 741, 742.
 

 In State v. Jouvet, supra, a witness for the State was asked the question:
 
 “
 
 When you arrived in New Orleans on the 14th of January, did you play cards at the Gem Club ?’ ” Objection was made to this question on the ground that the information alleged that the offense was committed on January 17 and not on January 14. The trial judge overruled the objection and held the question proper. This court in affirming his ruling said:
 

 “ * * * The trial judge in his per curiam states that he admitted the testimony to show that the gambling was intentionally conducted as a business. The testimony is relevant for the purpose of showing the continuity of the offense, system, guilty knowledge and criminal intent. LSA-R.S. 15:445 and 15:446.”
 

 In Bill No. 5 Vernaci contends that the lottery paraphernalia introduced by the State were not identified as her property and were never connected with her, and so were inadmissible. There is no merit in this contention. The paraphernalia were seized in the presence of Vernaci in the room which she leased and occupied, while they were in her possession and under her control. Moreover, the exhibits were identified at the trial as the identical paraphernalia seized on this occasion by the arresting officers. Appellant’s objection seems to us to go more to the weight to be given to the evidence than to the question of its admissibility.
 

 Mills Bill No. 17 was taken to the overruling by the trial judge of Mills’ exception to the jurisdiction of the Criminal District Court for the Parish of Orleans. According to the trial judge’s per curiam this plea was presented to the court after all the evidence had been heard and the case submitted. The basis of the plea is that the evidence does not show that any offense has been committed by Mills in the Parish of Orleans, and that therefore venue of the case is improperly laid in that parish.
 

 Since Mills did not avail himself of his right to have the question of jurisdiction tested before going to trial, but filed this motion only after the evidence had been adduced and the case submitted to the trial judge for decision, the question of jurisdiction became a question of fact, and the sufficiency of the evidence establishing it cannot be reviewed on appeal. It is only where no evidence at all is submitted to establish venue that it may be inquired into by this court. State v. Paternostro, 224 La. 87, 68 So.2d 767; Id., 225 La. 369, 73 So.2d 177; State v. Heiman, 227 La. 235, 79 So.2d 78.
 

 In support of Bill No. 17 counsel for Mills argue that there are three essential elements of a lottery — consideration,
 
 *785
 
 prize, and chance — , and that the State must prove
 
 "in limine
 
 the situs of each element”. This argument does not merit serious attention. Counsel evidently overlook the fact that these defendants were not charged with the conducting or operation of a lottery
 
 as a crime.
 
 They were charged with gambling as a business denounced by Article 90 of the Criminal Code, in that they conducted a lottery at 1229 Simon Bolivar Street in New Orleans. There is evidence in the record in this case to show that Mills and Vernaci committed the offense at that place, within the jurisdiction of the trial court. Consequently the question presented — the question of the sufficiency of that evidence — is one of fact which we cannot review.
 

 Mills Bill No. 18 was reserved to the overruling of a motion for a new trial. In this motion Mills alleges that the verdict is contrary to the law and the evidence. It is well settled that a motion for a new trial based on the allegation that the verdict is contrary to the law and the evidence does not present anything for review. Defendant also alleges in support of this bill that the State obtained the conviction solely on circumstantial evidence, that in order to convict on such evidence every reasonable hypothesis of innocence must be excluded, but that the evidence in this case fails to negative certain enumerated hypotheses of innocence. On this point the trial judge tells us in his per curiam, with which we fully agree, that “the contentions of defendant fall within the sufficiency of evidence rule”, and they therefore present issues which this court will not review. The other reasons advanced for the granting of a new trial have already been discussed and disposed of in the course of this opinion.
 

 Mills Bill No. 19 was reserved to the overruling of his motion in arrest of judgment. All questions presented by this motion have been fully answered in this opinion, and no further discussion is necessary.
 

 Vernaci Bill No. 4 was reserved in connection with a question asked of State’s witness Hattie Tucker. The question was: “Before October 22, 1954, the date these police officers arrested Lena Vernaci, how long had she been using that room before that date?” Counsel for defendant objected to the question, stating that the offense was charged on October 22. The court overruled this objection, and this bill was reserved.
 

 The trial judge in his per curiam tells us: “Proof of the length of time the defendant Lena Varnaci occupied the room, and any and all circumstances concerned with her occupancy was relevant. While neither the question, or the answer elicited from the witness, even remotely suggested criminality, even if it did, the testimony sought would have been relevant, to show that the defendant did engage
 
 intentionally
 
 in the conduct of. gambling as a
 
 business
 
 at the address 1229 Simon Bolivar Street ”
 
 *787
 
 The judge cited numerous authorities which support his holding.
 

 Vernaci Bill No. 6 was reserved to the overruling by the trial judge of her motion for a new trial, based principally on the allegation that there was no evidence to prove the offense. All of the testimony taken at the trial is in the record, which we have read. Contrary to appellant’s contention, there is evidence to support the charge against each of these defendants, and, as we have already said, if any evidence whatsoever on the issue of the guilt or innocence of an accused is adduced before the trial court, the latter’s judgment on its weight and sufficiency is final and not reviewable by this court.
 

 Vernaci Bill No. 7 was reserved to the overruling by the trial judge of her motion in arrest of judgment. All questions presented by this motion have been fully answered in the course of this opinion in our discussion of bills reserved either by Mills or Vernaci.
 

 In understanding and answering the contentions raised by defendants’ many bills of exception, this court has been given able assistance by the per curiams of the trial judge. The judge set out and explained all the facts and circumstances in connection with each bill, and cited copious authority in support of his rulings on each point. These per curiams show careful study and hard work, and we are greatful for the help which the judge has thus afforded us.
 

 The convictions and sentences are affirmed.
 

 FOUR.NET, C. J., absent.
 

 [1]
 

 . It is the view of the writer that the immunity from self-inerimination granted by the provisions of the Fifth Amendment to the United States Constitution cannot be claimed by defendant in a proceeding in a state court. See dissenting opinion in State v. Dominguez, 228 Da. 284, 82 So.2d 12.
 

 [2]
 

 . Moreover, in these paraphernalia there were record sheets showing lottery plays or bets bearing the date October 22, the date of the offense as charged in the bill of information.