LOTTINGER, Judge.
This, and the companion suit entitled Zachary v. United States Fidelity and Guaranty Company, La.App., 116 So.2d 167, are before us on appeals taken by the defendant in each suit from judgments awarding the respective plaintiffs damages arising out of an automobile accident which occurred on November 19, 1958. The trial judge has favored us with written reasons for judgment which we herewith set out in full:
“The case of J. F. Delatte and his wife, Mrs. Nell Zachary Delatte, vs. United States Fidelity & Guaranty Company, No. A-5020, and its companion suit, Ralph B. Zachary and his wife, Mrs. Ora Lee Coates Zachary vs. United States Fidelity & Guaranty Company, No. A-5021, were consolidated for trial and tried on March 31, 1959. The defendant in both suits is United States Fidelity & Guaranty Company as the insurer of Mississippi Chemical Express and Roy Knigh-ton respectively. The plaintiffs’ allegations in both suits with respect to how the accident happened are identical.
“It is alleged that plaintiff, Mrs. Zachary, was driving her husband’s 1958 Chevrolet automobile on Louisiana Highway 19 in East Feliciana Parish at about 9:30 in the morning on November 19, 1958; that Mrs. Delat-te, the other plaintiff, was a guest passenger riding on the front seat with her. They were driving in a northerly direction on Highway 19, and as they reached a point just south of the town of Wilson in East Feliciana Parish, and as they neared the crest of a hill there came into view a short distance ahead two trucks proceeding in a southerly direction on the said highway, one of the trucks being a 1957 White truck and semi-trailer owned by Mississippi Chemical Express and being driven by Washington M. Akins, and the other truck being a cattle truck owned by Roy Knighton and being driven by Clarence Jones; that the driver of the cattle truck owned by Roy Knighton was at that time attempting to pass the truck owned by Mississippi Chemical Express and had preempted Mrs. Zachary’s traffic lane; that in an attempt to avoid a collision with the cattle truck, Mrs. Zachary put on her brakes and pulled to her right, but when her car hit the east shoulder of the road it swerved to the left and into the left traffic lane where it was struck by the truck owned by Mississippi Chemical Express and knocked into the ditch on the west side of the road.
“Defendant insurance company denied the accident happened in this manner and asserts that the cattle truck did not leave its right lane of traffic and did not preempt plaintiffs’ traffic lane; and, further, that the lead truck owned by Mississippi Chemical Express was in no wise negligent.
“After hearing all testimony adduced by plaintiffs and defendant, this Court found as a fact that the accident occurred as alleged by plaintiffs and that plaintiffs were in no wise negligent; and further found that the preponderance of the credible testimony proved conclusively that the driver of the sec *171 ond truck, that is, the cattle truck, did pull over into his left or northbound lane of traffic at about the time that plaintiffs’ car neared the crest of the hill over which plaintiffs could not have seen prior to attaining almost to the crest thereof.
“The Court further found as a fact that plaintiff, Mrs. Zachary, the driver of the car, was confronted with a sudden emergency upon seeing this cattle truck in her lane of traffic, that she immediately applied her brakes, pulled to her right and, in doing so, the car went out of control through no fault of hers, skidded across the road and into the path of the first truck, that is,, the Mississippi Chemical Express-truck, and thus the accident and attendant injuries to the plaintiffs ensued.
“The Court further found as a fact that the driver of the first truck, that is, the Mississippi Chemical Express truck, exercised due care and was not negligent, and his actions in no wise caused the accident and injuries to the plaintiffs.
“The Court further found as a fact that defendant’s driver of the first truck owned by Mississippi Chemical Express, by his own testimony, demonstrated that he could not have seen whether or not the second truck, this is, the cattle truck was attempting to pass him at the instant preceding the accident, in view of his testimony that he was looking forward just prior to the accident and saw plaintiffs’ car come over the hill, even though prior to that time he had looked into his rear view mirror and had seen the cattle truck a hundred or so feet behind him.
“The Court, after listening to the testimony of the plaintiffs’ witnesses, Mrs. Zachary and Mrs. Delatte, and observing their demeanor on the stand, is convinced that Mrs. Zachary and Mrs. Delatte are truthful witnesses and that they testified to the Court as to the true facts in the case. This opinion of the Court relative to the truthfulness of these witnesses is verified and substantiated by the undisputed fact that each of these ladies, without having opportunity to discuss the matter between themselves, and immediately and within a day or two following the accident, made to several people the identical statement as to how the accident happened as they related it in court.
“State Trooper Robert Morris testified that Mrs. Zachary told him at the hospital in Centreville within two hours after the accident happened that it happened in the same manner as she described it to the Court.
“In addition, both plaintiffs testified under oath that they described the accident just as they described it in court to a Mr. George Reynaud representing United States Fidelity and Guaranty Company the day following the accident or the day after. The court especially noted that Mr. George Rey-naud was in Court, sitting at the counsel table, and was pointed out by Mrs. Zachary and Mrs. Delatte as being the person to whom they gave these statements. Mr. Reynaud was not placed on the stand by the defendant to contradict these statements. The Court feels sure that if the defendant had been able to contradict these statements by Mr. Reynaud’s testimony, certainly they would have placed him on the stand.
“Turning now to consideration of the testimony offered by the defendant, the Court would particularly comment upon the testimony of the driver of the second truck, that is, the cattle truck. He was a country colored man who said that he had been working for Mr. Roy Knighton, the insured, for a number of years. He testified that he at *172 no time pulled out of his lane of traffic and pulled into the northbound lane of traffic. However, the Court reluctantly finds that this witness is not credible and his testimony is not subject to belief, especially considering the direct testimony of Mrs. Zachary and Mrs. Delatte. The Court is unable to believe this witness’ testimony, further, because of the conditions under which the accident happened. As aforesaid, Mrs. Zachary and Mrs. Delatte have testified that as they came over the hill they saw this cattle truck in their lane of traffic and that Mrs. Zachary immediately applied her brakes, causing her car to skid. The Court is unable to conceive of any reason for Mrs. Zachary to suddenly apply her brakes as she came over the hill unless there was some obstruction in her lane of traffic. Otherwise, there would have been no reason for her to do so.
“The cause of the accident, in the opinion of the Court, is clearly established; that is, the gross negligence of Clarence Jones, the driver of the cattle truck, in pulling over into the northbound lane of traffic and attempting to pass the lead truck at almost the very moment that plaintiffs’ car came over the hill. By so doing, defendant’s second truck driver placed plaintiffs in a position of imminent peril in which they were deprived of doing anything other than what they did in an attempt to save themselves.
“With respect to the elements of damages and the quantum of damages suffered by plaintiffs, the Court, after carefully considering the allegations of plaintiffs’ petitions with respect thereto, and the evidence adduced by counsel for plaintiffs, with special reference to the testimony of Dr. R. J. Field, Jr. and the letter from Dr. Moss Bannerman admitted in evidence concerning the necessity of future surgery on Mrs. Zachary’s left arm and the approximate cost thereof, and after personally viewing and examining the present physical condition of her arm, is impressed with the extreme seriousness suffered by Mrs. Zachary’s injuries.
“With respect to the damages suffered by Mrs. Delatte, the Court was impressed with the testimony of Dr. Homer G. Ellis relative to the possibility of Mrs. Delatte’s child having suffered a brain injury because of lack of oxygen after the premature separation of the placenta, which he testified was caused by the accident and which may not be apparent until the child becomes of school age. According to the evidence, Mrs. Delatte has been informed of this grave possibility of brain damage to her child. Surely a mother could sustain no greater shock or mental anguish than to know that her child may become afflicted.
“The Court finds that plaintiffs, Mrs. Nell Zachary Delatte and Mrs. Ora Lee Coates Zachary, suffered and sustained injuries as alleged in their respective petitions and proved at the trial; and, accordingly, judgment is rendered as follows:
“1. Mrs. Nell Zachary De-latte ; for physical pain, suffering, shock and mental anguish; permanent impairment of bodily functions $8,463.00
“2. J. F. Delatte; as head and master of the community of acquets and gains existing between him and his wife Mrs. Nell Zachary Delatte
(a) Past and present medical expenses 167.00
(b) Loss of earnings 277.50
“3. Mrs. Ora Lee Coates Zachary; for physical pain, suffering, shock and mental anguish; *173 permanent impairment of bodily functions 8,833.00
“4. Ralph B. Zachary; as head and master of the community of acquets and gains existing between him and his wife, Mrs. Ora Lee Coates Zachery:
(a) Past and present medical expenses 220.55
(b) Future medical expenses 800.00
“Defendant, United States Fidelity and Guaranty Company, as the insurer of the cattle truck belonging to Roy Knighton, is ordered to pay all costs of court arising out of plaintiffs’ suit against defendant insurance company as such insurer, said costs to include $100.00 each as expert witness fees to Dr. R. J. Field, Jr. and Dr. Homer G. Ellis.”
While we find ourselves in complete agreement with the Lower Court’s conclusions with respect to the liability, we are of the opinion that the quantum is somewhat excessive. We do not understand how the Lower Court arrived at the figure awarded Mr. J. F. Delatte. It appears that his medical expenses amounted to the sum of $167. Mrs. Delatte testified that prior to the accident she was employed at the East Louisiana State Hospital at a monthly salary of $185. At the time of the accident, she was pregnant, and her doctor had tentatively scheduled delivery by Caesarean section for November 24, 1958. Caesarean section was actually performed -on the day of the accident or 5 days ahead of that time for which it had been tentatively scheduled.
It appears clear that, as she had planned to take off from work for the delivery of her child anyway, the award should be limited to the five days, which, computed at the rate of $6 per day, would total the sum of $30, thus making a total award to Mr. Delatte as head and master of the community of $167 plus $30 or a total of $197.
With respect to the injuries suffered by Mrs. Delatte the testimony of Dr. Homer G. Ellis is as follows:
“On November 19th Mrs. Delatte came to my office following an automobile accident and at that time Mrs. Delatte had a four inch laceration of the right flank which extended three inches beneath the skin. She also had abrasions of her right fourth, little toe, her tongue, her right arm. Her major injury was her right flank wound. At that time the wound was cleansed and repaired under local anesthesia. She was given tetanus tox-oid. She was pregnant at that time. Her blood pressure, pulse and respiration were all within normal limits. Regular fetal heart tones were heard, indicating to me that the baby was alive at the time and doing well. Another member of the family involved in the accident was in the hospital at the time and I recommended that she stay nearby so that she might have an opportunity to observe her in case something did turn up. At approximately four o’clock that afternoon Mrs. Delatte noticed dizziness and weakness. It was advised that she lay down and take it easy. I was called and on examination we found that Mrs. Delatte had vaginal bleeding. At that time there was no abdominal pain and the fetal heart beat was again noted to be regular. The diagnosis at that time was made of partial premature separation of the placenta versus a ruptured marginal sinus. A Caesarean section had been planned previously for this baby and in view of that situation it was decided that a conservative management would not be best and that the Caesarean section should be done at that time. Accordingly, Mrs. Delatte was prepared for surgery and the Caesarean section was performed and delivered a normal male *174 infant. Post-operatively Mrs. Delatte did well both in terms of her Caesarean section and her lacerations sustained in the accident. She was on — on her 6th post-operative day her sutures were removed and she was discharged on the 6th post-operative day.
“Q. Doctor, may I ask you this. Where you have a premature separation of the placenta, as you found in her case, isn’t it quite possible for the child and mother to smother to death? Isn’t that a serious situation ? A. Pardon me. The mother and child?
“Q. Let’s say the child. A. I don’t like to call it smothering. The infant is handicapped in terms of getting its necessary oxygen which is a hazard.
“Q. Now, that may effect the young one later in life, may it not? A. It can effect an infant immediately in terms of survival and it can effect the baby in terms of later life, in terms of mental function.
“By the Court: In terms of what, Doctor ?
“By Mr. Bennett: Mental function.
“By the Witness: Mental function. Severe lack of oxygen in the infant during delivery can give permanent brain damage.
“By the Court: Is the baby normal now?
“By the Witness: Yes, sir. At a six-week examination the infant was normal.
“Q. Say in later life, the child could still suffer mental damage, could it not? A. I would have certain reservations in that respect before I put a final answer on that. I think the child should be evaluated from time to time with that in mind, although I would anticipate being able to discover some abnormality at a six-weelc checkup.
“Q. Well, actually you wouldn’t be able to tell would you, Doctor, until the baby was fully grown? Twenty-one years old? Isn’t that true? A. No. I would anticipate seeing abnormalities about school age. At a time when the child would be expected to demonstrate some mental ability; prior to that time it is possible that abnormalities could be noted.”
Further, on page 57 of the transcript, under cross-examination, the witness was asked:
“Q. Now, I understand that your presumptive diagnosis was later borne out.
“A. Yes. After delivery the diagnosis was verified by inspection of the placenta which showed that a 3x3 centimeter area that could not transport oxygen to the baby. In other words, that did verify the diagnosis of premature separation of the placenta.”
The doctor further pointed out on page 58 of the transcript that Mrs. Delatte had a normal pre-natal course, that no major catastrophe had occurred. He was definitely of the opinion that the accident caused the premature separation of the placenta. He stated:
“This wound that was sustained in the right flank was very deep. It did not enter the peritoneal cavity but I do feel that it was enough trauma to precipitate the premature separation.”
The above and foregoing makes it clear that the accident caused a premature separation of the placenta with a resulting diminution in the oxygen supply to the baby which could, though not necessarily so, result in a mental malfunction which could later develop in the child. This possibility, however remote, must necessarily have caused this mother considerable worry and we think it proper to consider it in assessing the damages to be awarded her. All things considered, however, we believe that the award of the trial judge is somewhat exces *175 sive and should be reduced to the sum of $5,000.
For the reasons assigned, the judgment appealed from is amended so as to reduce the award to J. F. Delatte to the sum of $197 and is further amended by reducing the amount awarded Mrs. Nell Zachary Delatte to the sum of $5,000.
Judgment amended and affirmed.