154 So.2d 788 (1963)
Lucille Thibodeaux CARVELL, Plaintiff-Appellee,
v.
Edith WINN et al., Defendants-Appellants.
No. 859.
Court of Appeal of Louisiana, Third Circuit.
June 18, 1963.
Rehearing Denied July 9, 1963.
*789 Simon & Trice, by J. Minos Simon and Phil Trice, Lafayette, for plaintiff-appellee-appellant.
McBride & Brewster, by William H. McBride, Lafayette, for defendant-appellant-appellee.
Davidson, Meaux, Onebane & Donohoe, by Richard C. Meaux, Lafayette, for third-party defendants-appellees.
Before TATE, HOOD, and CULPEPPER, JJ.
TATE, Judge.
Mrs. Carvell, the plaintiff, was injured when the car in which she was riding was struck from the rear by an automobile *790 driven by Miss Edith Winn. The plaintiff sues Miss Winn and the latter's liability insurer to recover for her personal injuries.[1]
Miss Winn's negligence is stipulated, and the only issue at the trial was the amount of damages to which the plaintiff was entitled.
The case was tried before a jury, which rendered a verdict in favor of the plaintiff in the amount of $7000. Both the plaintiff and the defendants have appealed.
The plaintiff contends that the award was insufficient, the defendants that it was excessive. In connection with these contentions, the issues of the appeal presented for our determination concern: (1) The trial court's permitting a Texas chiropractor to testify as an expert; (2) the trial court's exclusion from the evidence of a cineradiographic (movie X-ray) film; and (3) the amount of the award.

1. Texas chiropractor testifying as expert.
The trial court permitted W. D. Harper, a doctor of chiropractic, to testify as an expert witness in the field of chiropractic and physiology. The defendants claim that the admission of this witness's testimony as an expert or for any purpose was erroneous, while the plaintiff contends that the trial court erroneously limited the scope of his testimony.
The witness Harper holds a doctor's degree in chiropractic and is licensed to practice as such in three states, with licensee requirements including his passing examinations in the basic sciences of anatomy, physiology, chemistry, hygiene, public health, pathology and bacteriology. He has taught at the Texas Chiropractic College since 1946 and is now the Dean of said institute.
The general rule as stated at 20 Am. Jur. "Evidence" Section 786 at p. 660 is that: "The determination of the question of the competency and qualifications of one offered as an expert witness is addressed to the judicial discretion of the trial judge before whom the testimony is offered, and his ruling in passing on the qualifications of such proposed expert witness will not be disturbed unless the error is clear and involves a misconception of the law * * *." See also 5A C.J.S. Appeal and Error § 1604(4), p. 94 and 32 C.J.S. Evidence § 458b, p. 99.
Accordingly, it has consistently held that there is no abuse of discretion in allowing a chiropractor to testify in a personal injury action, where a proper foundation is laid and the matter is within the scope of the profession and practice of chiropractic. Annotation, "Chiropractor's Competency as expert in personal injury action", 52 A.L.R.2d 1385; 32 C.J.S. Evidence § 537, p. 265.
The defendants' chief objection to admitting the testimony of Dr. Harper as an expert or for any purpose is that the practice of chiropractic as such is not authorized in Louisiana, at least unless the practitioner possesses the same qualifications of education from an accredited medical school and passes the same examinations as are required of (in the layman's term) "medical" doctors. England v. Louisiana State Board of Medical Examiners, La.App. 1 Cir., 126 So.2d 51, certiorari denied. However, the fact that a witness is not licensed to practice under the laws of the jurisdiction is immaterial insofar as concerns his competency to testify as an expert, which is based upon his specialized training, knowledge, and experience. See Meyers v. Wells, Mo., 273 S.W. 110 (1925). We therefore find no error on the part of *791 the trial judge in admitting Dr. Harper as an expert witness.
On the other hand, counsel for the plaintiff urges that the trial judge erred in refusing to allow this witness to give an opinion as to the possible causal connection between the plaintiff's alleged neck and back injury and certain physical ailments of which she subsequently complained, such as tonsilitis, vaginal bleeding, a burning of the eyes, and stomach trouble. Plaintiff contends that, since the trial court accepted Dr. Harper as an expert witness on chiropractic and physiology, it should have allowed him to give his opinion as to any such causal relationship.
The trial court permitted the witness to testify, on the basis of the physiology of the body, of the possible physical connection between such internal ailments and the ligamental and nerve injuries received in the accident; but it refused to let the witness testify to his opinion as to the actual causal relationship between the trauma sustained and these physical ailments from which the plaintiff suffered later. The trial court held that such opinion testimony was beyond the field of the doctor's competence under the facts shown by this record.
As previously stated herein, whether or not a witness meets the qualifications to testify as an expert is largely within the discretion of the trial judge. In our opinion, it is also largely within the discretion of the trial judge to determine the competency of expert witnesses to testify to specialized areas of inquiry not necessarily within his general competency to give an opinion as an expert, or at least not shown to be so by the facts of the record. That is, the trial court is not under a mandatory duty to permit an expert witness to testify to any matter upon which the expert himself says he is qualified to give an expert opinion; the court must have some discretion to limit the witness's testimony as an expert to the actual field of his expertise and as applicable to the facts of the particular litigation then before it (subject of course to a showing that the court abused its discretion in this regard, State v. Carter, 217 La. 547, 46 So.2d 897).
Thus, referring to the ability of a witness to testify as an expert based upon his "experiential capacity", Dean Wigmore noted that "The capacity is in every case a relative one, i. e., relative to the topic about which the person is asked to make the statement * * *. His fitness, then, is a fitness to answer on that point. He may be fitted to answer about countless other matters, but that does not justify accepting his views in the matter in hand." 2 Wigmore on Evidence (3rd ed., 1940), Section 555(1) at p. 634. "In most jurisdictions it is repeatedly declared that the decision upon the experiential qualifications of witnesses should be left to the determination of the trial court", referring to "the fact of the possession of the required qualification by a particular witness." Ibid, Section 561, p. 641. Cf. LSA-R.S. 15:466; State v. Mills, 229 La. 758, 86 So.2d 895 (syllabus 8).
We think that the trial judge should be given some latitude in the determination of questions of this nature, and insofar as the instant case is concerned, we fail to see where the trial judge has abused his discretion.

2. Refusal to admit X-ray motion picture into evidence.
In connection with the testimony of Dr. Harper, the plaintiff offered into evidence a motion picture X-ray film of a human being walking or in motion, in order to show the vertebral bodies and joints as they move or as they should move in walking and turning. After viewing the film outside of the presence of the jury, the trial court upheld the defendants' objection to the admission of this illustrative film on the ground, inter alia, that it was "too general in its scope and would not have sufficient bearing upon the particular issues now before the Court". On appeal, the plaintiff complains that this ruling was prejudicial error.
*792 These X-ray movies were not taken of the plaintiff but rather were illustrative or demonstrative generally of the motion of the skeletal structure of the human body; included also in the movie X-ray film were alleged depictations of the vertebral fixations that result from whiplash and other injuries to the surrounding soft tissue structure. In appellant's brief, it is noted that the film "graphically depicts or portrays what is meant by twenty-five percent or sixty percent limitation of motion of the vertebral bodies." Dr. Harper, who had viewed the film, stated that it showed the structural and functional characteristics of the vertebral joints and the effect of stress thereupon.
As stated at 20 Am.Jur. "Evidence" Section 738, p. 616, the general rule is that: "When motion pictures may and may not be used advantageously and properly in placing facts before the jury is a question which must vary with the circumstances of a particular case, and the decision as to their admission must in each case, be addressed largely to the judgment and discretion of the trial court without any restricting general formula laid down to control him."
This source also notes that since motion pictures "are so peculiarly susceptible to fabrication, the courts as a general rule exercise unusual caution in determining whether they should be allowed as evidence". Ibid. Cf., Costanzo v. Southern Farm Bureau Casualty Ins. Co., La.App. 3 Cir., 124 So.2d 621; Gagliano v. Boh Bros. Const. Co., La.App. Orl., 44 So.2d 732; McClung v. Delta Shipbuilding Co., Inc., La.App. Orl., 33 So.2d 438. It is further noted in the Annotation, "Use of motion pictures as evidence," 62 A.L.R.2d 686, 695: "As the sufficiency of the preliminary proof to properly authenticate motion pictures for admission in evidence may vary according to the facts in the particular case and the nature of the subject matter of the films, it has been held to vest largely in the direction of the trial court."
These general rules regarding the introduction of motion pictures as evidence of actual events, also apply to motion pictures introduced as demonstrative or illustrative evidence, depicting general principles or experiments rather than actual events. See Annotation above cited, especially at 62 A.L.R.2d 696. If properly authenticated, such illustrative motion pictures are admissible or not within the large discretion of the trial court. Annotation above-cited at 696, ("The majority of the cases support the rule that motion pictures of reconstructed scenes or of posed demonstrations are admissible in evidence provided the relevancy and accuracy of the films is adequately established."); Sparks v. Employers Mut. Liab. Ins. Co., La.App. 2 Cir., 83 So.2d 453, certiorari denied; Millers' Nat. Ins. Co. v. Wichita Flour Mills Co., C.A. 10, 257 F.2d 93, 76 A.L.R.2d 385 (1958); Navajo Freight Lines, Inc. v. Mahaffy, C.A. 10, 174 F.2d 305; Richardson v. Missouri-K.-T. R. Co., Tex.Civ.App., 205 S.W.2d 819 (1947); Philippi v. New York, C. & St. L. R. Co., Mo.App., 136 S.W. 339 (1940).
Thus, the exclusion of illustrative motion pictures containing irrelevant matter is within the proper exercise of the trial court's discretion. Morris v. E. I. Du Pont De Nemours & Co., 346 Mo. 126, 139 S.W.2d 984, 129 A.L.R. 352 (1940). Or as stated in the previously cited annotation at 62 A.L.R.2d 691, "to be admissible motion pictures must tend to prove or disprove some issue in the case, and consequently the relevancy of motion pictures necessarily depends on the issues in the case and the subject matter of the film. Relevancy is primarily a matter for the discretion of the trial court."
In the instant case, the trial judge refused to permit the jury to view the film because he felt it was too general and contained too much irrelevant matter. After viewing the film, we cannot say he abused his discretion in the matter. (We expressly *793 make no ruling as to whether or not the proffered film was properly authenticated.)

3. Amount of the award.
The plaintiff, Mrs. Carvell, sustained what her attending physician called "quite severe" injuries as a result of the accident. She was hospitalized for a week, under traction four hours a day; sustained an objectively verified weakness, atrophy, and numbness of the right arm as a result of nerve damage, persisting several months; and suffered from fairly severe neck pains and headaches. Three months after the accident she was also required to wear a head halter for a month or two. She was eight months pregnant at the time of the trauma; according to her testimony and that of her attending physician, the accident caused her concern over the possibility of damage to her unborn child (although fortunately the child suffered no ill effects and was born healthy and normal).
Her attending physician, a general practitioner, found no further objective symptoms after five months. Due to her continued complaints of pain, however, he had referred her to an orthopedist.
This orthopedistwho had examined the plaintiff on three occasions, the last just before the trial took place sixteen months after the accidentfelt that Mrs. Carvell had sustained permanent ligamental damage, which caused some loss of flexibility and pain upon motion, evidenced by a loss of motion and by spasm which he felt to be objective symptoms. This orthopedist based his determination also upon the X-rays taken during the first four months following the accident, which showed an overlapping of the fourth cervical vertebra over the fifth, which he felt to be a significant abnormality, indicating, in conjunction with the other symptoms, that ligamental tears rather than merely a strain resulted from the accident. (The attending physician essentially agreed with this interpretation of the X-ray findings.) It was this orthopedist's opinion that the scar tissue of the torn ligaments caused and will cause for an extended period of time, significent pain upon motion because of the stretching of the inflexible scar tissue.
Another orthopedist who examined the plaintiff for the defendant fourteen months after the accident found no objective residual to verify the patient's complaints of neck pain on motion and headaches.
The great preponderance of the medical testimony proves that there was no causal relationship between the accident and various other ailments of which the plaintiff complained, such as vaginal bleeding and stomach disturbances.
We have recently reiterated that an award for personal injuries depends in each case upon its own factual circumstances, which may vary greatly from case to case even involving somewhat similar injuries, even though awards should not be all out of proportion with other awards made for similar injuries; and we pointed out that the trial court is entrusted with a large discretion in making such awards which ordinarily should not be disturbed on appellate review. White v. Robbins, La.App. 3 Cir., 153 So.2d 165, (decided May 14, 1963, and authorities therein cited.) We then reiterated:
"Thus, on appellate review of a trial court award for pain and suffering, the question is not to calculate with any mathematical exactitude any fixed amount as alone proper under the circumstances, nor to attempt to reconcile widely variable and in fact irreconcilable past awards made for injuries which in the abbreviated appellate discussion of them seem somewhat similar. The function of the reviewing court is simply to determine whether the present trial court award is manifestly excessive or manifestly insufficient under all the circumstances of the present case."
In view of the award made, the trial jury must have concluded that the plaintiff sustained an injury permanently producing pain. We think the evidence *794 supports this conclusion. Considering that fact and also that the plaintiff was an expectant mother and thereby was occasioned additional mental distress over possible injuries to her unborn baby (Roux v. Brickett, La.App. 3 Cir., 149 So.2d 456; Delatte v. United States F. & G. Co., La.App. 1 Cir., 116 So.2d 169), we find no manifest insufficiency or excessiveness in the jury's determination that the plaintiff was entitled to $7000 for her personal injuries. Roux v. Brickett, cited above; Cassreino v. Brown, La.App. 3 Cir., 144 So.2d 608, and the awards therein summarized.

Decree.
For the reasons assigned, the judgment of the trial court is affirmed. The costs of this appeal are to be paid one-half by the plaintiff and one-half by the defendants.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
NOTES
[1] The defendants impleaded by third party demand the employer and liability insurer of the driver of the car in which the plaintiff was riding as passenger. There was no evidence that any negligence on his part contributed to the accident, and the defendants did not appeal from the dismissal of their third party demand against such third parties.