202 So.2d 438 (1967)
Carlos A. BONILLA, on his own behalf and on behalf of his Minor Son, Jose Bonilla
v.
ARROW FOOD DISTRIBUTORS, INC., et al.
ARROW FOOD DISTRIBUTORS, INC.
v.
MICHIGAN MUTUAL LIABILITY COMPANY and Transport Insurance Company.
Mrs. Lucy T. BERNARD, Individually and as Natural Tutrix of her Minor Children et al.
v.
ROBERTSON TANK LINES, INC. et al.
JOHNNY RIZZO FURNITURE CO., Inc.
v.
ROBERTSON TANK LINES, INC. et al.
ABC EQUIPMENT COMPANY et al.
v.
JOHNNY RIZZO FURNITURE CO., Inc., et al.
Nos. 2506-2510.
Court of Appeal of Louisiana, Fourth Circuit.
July 17, 1967.
Rehearing Denied October 4, 1967.
*440 Christovich & Kearney, William K. Christovich, New Orleans, for defendants-plaintiffs-appellants.
Ted J. Borowski, Houma, and Nathan Greenberg, Gretna, for plaintiffs-appellees.
Lemle & Kelleher, Allen R. Fontenot, New Orleans, for plaintiff-defendant-appellee.
Nelson, Ormond & Nelson, J. Thomas Nelson, New Orleans, for plaintiff-appellee.
Curtis, Foster & Dillon, Gerard M. Dillon, New Orleans, for defendant-appellee.
Adams & Reese, Henry B. Alsobrook, Jr., New Orleans, for defendant-appellee.
Hammett, Leake & Hammett, James W. Tranchin, New Orleans, for intervenor-appellee.
Before REGAN, SAMUEL and CHASEZ, JJ.
SAMUEL, Judge.
These five suits, which were consolidated for trial in the district court and for argument here, arise out of a multiple vehicle accident. Involved were the following:
(1) An International van truck owned by Arrow Food Distributors, Inc., driven by its employee Babe R. Hughes, and insured by Insurance Company of North America;
(2) A Ford truck owned by Johnny Rizzo Furniture, Inc., driven by its employee Claude J. Bernard (who was killed in the collision), and insured by Michigan Mutual Liability Company;
(3) A tractor-tank trailer owned by ABC Equipment Co. and/or its subsidiary, Robertson Tank Lines, Inc. (hereinafter referred to simply as the Robertson vehicle), driven by its employee Wallace F. Cannon, and insured by Transport Insurance Co.;
(4) A 1952 Pontiac sedan owned and driven by Carlos A. Bonilla.
The principal suit, No. 2,508 of our docket, is for damages resulting from Bernard's death. Plaintiffs in that suit are Bernard's widow, who sues individually and as natural tutrix of their four minor children, and the *441 decedent's three major or emancipated children. Defendants are Robertson, Transport and Cannon. However, ABC filed an answer stating ABC and not Robertson was the owner of the "Robertson" truck and that Robertson erroneously had been made a defendant. ABC appears to be the proper defendant and no contention is made to the contrary by any of the litigants. Lumbermen's Mutual Casualty Co., workmen's compensation insurer of Rizzo, intervened in the suit for compensation and funeral expenses paid to Mrs. Bernard as a result of Bernard's death.
Arrow Food Distributors, Inc. filed suit No. 2,507 of our docket against Michigan (the Rizzo insurer) and alternatively against Transport (the ABC-Robertson insurer) for damages to its truck.
Suit No. 2,506 of our docket was filed by Carlos A. Bonilla, individually and on behalf of his minor son, Jose, for personal injuries to both and for property damage to the Bonilla automobile against the drivers (except Bernard's estate), owners and insurers of all other vehicles.
Suit No. 2,509 of our docket was filed by Rizzo for damages to their truck; named defendants in the suit are Robertson (ABC) Transport and Cannon.
The fifth suit, No. 2,510 of our docket, was filed by ABC Equipment Co. for property damage and by Wallace Cannon for personal injuries. Defendants in that suit are Arrow, Rizzo, their insurers (Insurance Co. of North America and Michigan), John Doe Insurance Co. (Fireman's Fund Insurance Co., liability insurer of Jefferson Parish, subsequently was substituted as a party defendant for John Doe Insurance Co.), Jefferson Downs, Inc. (subsequently dismissed from the suit by plaintiffs) and Solomon Augillard, allegedly an employee of Jefferson Parish Landscape who had burned trash negligently creating a smog which caused the accident (subsequently it developed that Augillard was an employee of Jefferson Parish who worked at the dump).
Various third party demands were made in all of the suits. In all of the suits and demands the defendants answered denying liability and alternatively pleading contributory negligence. Fireman's (liability insurer of Jefferson Parish), a defendant in one suit (No. 2,510) and a third party defendant in all suits, also filed exceptions of one year prescription and of peremption. However, the conclusion we have reached makes a consideration of the exceptions unnecessary.
The trial court found the sole proximate cause of the accident was the negligence of Cannon, driver of the Robertson truck and accordingly rendered the following judgments:
(1) Suit No. 2,508, in favor of plaintiffs, Mrs. Bernard individually in the sum of $40,000 and for the use and benefit of her minor children in the sum of $40,000, in favor of Barbara Bernard, wife of Elwood Ber, and Juanita Bernard, wife of Rudy Dupre, each in the sum of $3,000, and in favor of Claudia Marie Bernard, wife of Thomas Guillot, the sum of $3,500, all against ABC, Transport and Cannon, in solido. Judgment also was rendered in favor of the intervenor, Lumbermen's in the sum of $6,034.99, together with any additional compensation benefits paid since the date of trial, to be paid by preference and priority out of the judgment rendered in favor of the plaintiffs.
(2) Suit No. 2,507, in favor of plaintiff, Arrow, and against Transport in the sum of $944.31.
(3) Suit No. 2,506, in favor of plaintiff, Bonilla, individually in the sum of $1,250 and on behalf of his minor son in the sum of $2,500, against ABC, Transport and Cannon, in solido.
(4) Suit No. 2,509, in favor of plaintiff, Rizzo, and against ABC, Transport and Cannon, in solido, in the sum of $3,843.11.
(5) Suit No. 2,510, in favor of all defendants and against the plaintiffs, ABC *442 and Cannon, dismissing said plaintiffs' demands.
The judgments also dismissed all third party demands.
ABC, Transport and Cannon have appealed. The plaintiffs in the Bernard suit, No 2,508, have answered that appeal seeking an increase in all awards made to the Bernard widow and children. However, in this court they now concede that, with the exception of the quantum awarded to each of the children for loss of love, affection and guidance, all of the other awards are adequate. Bonilla also has appealed; but in this court he only prays that the judgment of the trial court be affirmed.
The following facts are undisputed: The collisions occurred on April 26, 1964 at about 6 a. m. on Highway 90 in Jefferson Parish a short distance east of the Jefferson-St. Charles Parish line. The highway consists of two westbound traffic lanes and two eastbound traffic lanes on each side of a neutral ground. All of the vehicles involved were traveling in the same direction, westward, and we are here concerned only with those two lanes. The point of the accident was a short distance above the entrance to the Jefferson Parish dump. The Arrow, Rizzo and Robertson trucks were traveling in that order in the right or outside lane next to the shoulder of the road. The Bonilla automobile was traveling in the left or inside lane next to the neutral ground. The accident happened in an impenetrable bank of fog or smog. The Arrow truck, which had entered the fog or smog first, was struck in the rear by the front of the Rizzo truck. The Rizzo truck was struck in the rear by the front of the Robertson truck. The impact to the Arrow truck forced the rear end of that vehicle into the left lane where it was struck by the Bonilla automobile traveling in that lane. Bonilla, his son Jose, who was the only passenger in any of the vehicles, and Cannon were injured. Bernard, the driver of the Rizzo truck, was killed. Three state troopers arrived on the scene a short time after the collisions.
The sequence of the collisions and the lapse of time between them is in dispute. The litigants have evolved and urge two opposing and irreconcilable theories as to the manner in which the collisions occurred. ABC, Transport and Cannon argue that a first impact occurred when the Rizzo truck ran into the Arrow truck, killing Bernard and propelling the Arrow truck into the left lane; that shortly thereafter, between 15 and 40 seconds, the Robertson truck and the Bonilla automobile entered the fogged area almost side-by-side, the Robertson unit running into the rear of the Rizzo truck after skidding 72 feet and pushing the latter truck forward several feet; that a split second thereafter Bonilla ran into the rear of the Arrow truck which was then stopped with its rear extending in the left traffic lane some distance ahead of the Rizzo truck. All of the other litigants argue the Robertson truck first ran into the rear of the Rizzo truck propelling it into the Arrow truck, causing the death of Bernard, and almost simultaneously the Bonilla automobile ran into the rear of the Arrow truck which had been propelled into the left lane.
In addition to various photographs the evidence contained in the record relating to the accident itself consists of the testimony of ten witnesses. Those witnesses were the three surviving drivers, Hughes, Cannon and Bonilla; Jose Bonilla, the guest passenger in his father's car; Robert J. Trosclair and Lt. Norman Romaguera of the State Police, who investigated the accident; Dr. William Tonn, Jr., qualified as an expert in collision analysis; Frank Kopanica of the State Police, who was on his way to another accident and did not investigate this one; and Solomon Augillard and John Glenn, Jr., employees of the Jefferson Parish Sanitation Department. Bernard's widow and his eldest daughter also testified relative to the damages resulting from his death. In view of the fact that the trial *443 was held approximately three years after the occurrence of the accident the first ten named witnesses understandably had some difficulty in remembering some of the details.
Hughes, the Arrow truck driver, testified he was familiar with the area, having traveled it frequently. He was driving a truck partially loaded with frozen food (weight 18,000 pounds when fully loaded) and traveling at a speed of between 35 and 40 miles per hour until he crossed the Huey P. Long bridge. Then, encountering mild patches of fog, he reduced his speed to 30 miles per hour and put on his headlights. He had slowed to 20 miles per hour when he came into an extremely thick screen of fog, the heaviest he had ever seen. Immediately upon entering the fog bank he realized the danger and decided to pull off the road. He was traveling in the lane nearer the shoulder and had started to turn to the right so that his right front wheel was barely on the shoulder when, after he had been in the heavy fog only a short time, his vehicle was struck a very heavy blow from behind, knocking his truck out of control. He was stunned momentarily but did not lose consciousness. His vehicle was struck a second time. The second impact was not as severe as the first and the two impacts occurred almost simultaneously. He heard nothing before the first impact and the second impact was with the Bonilla Pontiac. He got out of his truck and observed the major portion of his vehicle was in the right lane at an angle, with the Bonilla Pontiac imbedded into the left rear which was in the left lane. He saw the Rizzo and Robertson trucks farther back but could not remember the distance. He secured a flare from a passing truck and took measures to keep other traffic from passing through until the state troopers arrived.
Wallace Cannon, the Robertson truck driver, also testified he was familiar with the highway. His tractor-tank trailer weighed 24,000 to 25,000 pounds and had an overall length of about 40 feet. He stopped to switch gas tanks west of the Huey P. Long bridge and at that time noticed the Rizzo truck pass. After he started again at 40 miles per hour he could see that truck ahead of him at all times until it entered the fog or smog bank. He was in the right lane of traffic at all times and did not reduce his speed until he entered the fog or smog bank which was the worst he had ever seen. It appeared to be coming from the right side of the road and looked like fog or smoke. He had encountered no fog prior to the bank. Just before the collision, through his mirror he saw a passenger car (the Bonilla vehicle) in the left lane at about the middle of his truck. When he got to the edge of the fog bank he saw the Rizzo truck stopped in the right lane. It happened so fast he does not recall putting on his brakes. He heard no crash before he struck the Rizzo vehicle. He was pinned in his truck and required assistance to get out.
Carlos Bonilla testified he was traveling from New Orleans with his son to go to work in Houma. After crossing the Huey P. Long bridge he ran into patches of fog, put on his headlights and reduced his speed to 30 miles per hour. Visibility had been good except for those fog patches. He was traveling in the left traffic lane next to the neutral ground when the Robertson truck passed him in the right lane. Seconds later, when going into the heavy fog bank, he heard a noise to his right, turned his head in that direction and almost at the same time crashed his car. He heard only two crashes, one to his right and the second when he hit the (Arrow) truck in his, Bonilla's, traffic lane. The two crashes were very close together. The Robertson truck entered the heavy fog bank when he was very close, perhaps one-half truck length away, and the two crashes came seconds thereafter. On cross examination he recalled he had stated in a pre-trial deposition that he had noted fires in an area across a ditch and fence about 15 or 20 yards away on the right side of the highway.
*444 Jose Bonilla, 17 years of age at the time of trial, testified: as they neared the heavy fog at a speed of 30 miles per hour the tank (Robertson) truck passed to their right going 40-50 miles per hour and shortly thereafter he heard a bump, turned around and right away they had their crash. Both crashes were very close together. He heard only one crash before his own and in the heavy fog they were unable to see anything in front of them.
Robert J. Trosclair, a state trooper, was the first investigating police officer to arrive at the scene. On the way to the accident site he encountered fog and several other accidents. He found the Bonilla automobile in the left lane behind the Arrow truck which was in the right lane on an angle with its rear protruding into the left lane. The point of impact had been solely in the left lane. The Rizzo and Robertson trucks were right together with the front of the former entirely in the right lane. The only skid marks he found on the scene measured 72 feet and were marks made by the Robertson truck.
Lt. Norman Romaguera of the State Police investigated the accident and was on the scene for several hours, arriving shortly after Trooper Trosclair. The weather was mildly foggy on his way and as he neared the scene he could see gray smoke. He described the fog at the situs as a ball of smoke, the darkest part about 100 yards off the highway, extending over both the east and westbound lanes. When he first arrived he could barely see the outline of the Robertson truck which was then about 10 feet into the fog bank. The smoke moved back and forth and appeared to be coming from the parish dump. He observed the Bonilla automobile completely in the left lane of the highway against the back of the Arrow truck which extended into the left lane at an angle. Fifteen feet down the highway (eastward) from the rear of the Arrow truck he saw the Rizzo truck and behind that the Robertson truck, both in the right traffic lane. The cab of the Rizzo truck was almost completely demolished and the driver (Bernard) was dead, pinned in the cab and unable to be extricated. The damage to the rear of the Rizzo truck was comparatively minor. It was a cab-over-engine type where the driver sits behind only about 1/16" of metal between himself and the next vehicle. There were 72 feet of heavy, continuous skid marks from the Robertson truck. Except for a small amount "past" the Rizzo truck, the only debris he could remember finding was where the Rizzo and the Robertson trucks were together. (The record is not completely clear as to whether this witness was here discussing only debris from the Rizzo truckRobertson truck impact or discussing generally debris on the road at the scene of the collisions).
Dr. William Tonn, Jr., a consulting engineer with several degrees in science, chemical engineering and allied subjects, and now specializing in explosion and collision analysis, was accepted by the trial court as an expert in the field of collision analysis. He testified on behalf of ABC, Transport and Cannon. After being notified of the accident by telephone, he examined a series of pictures of the vehicles involved and saw the Robertson truck when it was brought to Texas after the accident. He was of the opinion that the collisions did not happen simultaneously; there first had been a collision between the Rizzo and Arrow trucks when the former hit the latter knocking a portion of the Arrow truck into the left traffic lane; thereafter a second collision occurred when the Robertson truck ran into the rear of the Rizzo truck. He based his opinion solely on what was shown by the pictures and by his examination of the Robertson truck, particularly the damage to the rear of the Arrow truck, the heavy damage to the front of the Rizzo truck, the relatively light damage to the front of the Robertson truck and the rear of the Rizzo truck (pointing out that both of these vehicles were cab-over-engine types in which relatively heavy damage is sustained to the front as compared to the *445 rear), the debris which he thought was principally from the Rizzo and Arrow vehicles, and tire marks he felt were made by the Rizzo truck. In answer to a hypothetical question he also said he felt the Bonilla automobile would have passed its point of impact, and could not have collided, with the Arrow truck had the truck collisions occurred simultaneously.
The testimony of state trooper Frank Kopanica is limited to the condition of the weather. He testified he had investigated other accidents in the same general location on the date of the accident in this suit and that there had been a heavy fog bank covering about a mile in the area of the Jefferson Parish dump.
Solomon Augillard, the Jefferson Parish employee who worked at the parish dump, stated he got to work at 4 a. m. on the morning of the accident. At that time there was no fog or mist in the dump area. Fires had been lit the day before but they were not still burning. Prior to the accident he lit no fires and saw very little smoke. Just before 6 a. m. a large black cloudlike overcast came and covered everything so that he could see nothing. It lasted about 15 or 20 minutes. He did hear the noise resulting from the accident.
John Glenn, Jr., who drove a trash truck for the Parish of Jefferson, started to work on the day of the accident at 3:15 a. m. He left the incinerator at about 4:30 a. m. It was very foggy after crossing the Huey P. Long bridge and he was forced to travel at 20 miles per hour. The fog continued past the dump and as far as he could see. He stated there were no fresh fires burning in the dump and he heard the sound of the accident shortly after he arrived.
In two of their several specifications counsel for ABC, Transport and Cannon contend the trial court committed reversible error in refusing to accept Lt. Romaguera as an expert witness and in not accepting the findings and conclusions of Dr. Tonn, the collision analyst. We find no merit in either contention.
Lt. Romaguera was offered as an expert witness for the purpose of obtaining his opinion as to the cause of the accident, especially with respect to the time and occurrence of the various impacts. Offered as his sole qualification as an expert was the fact that he had been with the State Police twenty-five years, a major portion of which time had been spent in investigating traffic accidents. The trial court is vested with wide discretion in determining whether a witness is qualified to testify as an expert. State, Department of Highways v. Williams, La.App. 170 So.2d 152; State, Department of Highways v. Huson, La.App., 166 So.2d. 3; Carvell v. Winn, La.App., 154 So.2d 788. Here we agree with the trial court's conclusion.
A determination of the facts and issues was solely within the province of the trial judge; the purpose of an expert witness is to assist the court in making that determination; and the opinions of experts are not conclusive but are to be weighed as is true of other evidence (Town of Slidell v. Temple, La. App., 155 So.2d 681). It follows that the court was not required to accept the findings and conclusions of Dr. Tonn. They were not accepted because those findings and conclusions were based solely on Dr. Tonn's examination of the Robertson truck some time after the accident and his examination of photographs and because the court's findings and conclusions were different from, and contrary to, those of Dr. Tonn. See Martin v. Massachusetts Bonding & Ins. Co. of Boston, 121 So.2d 527.
The trial judge gave thorough and well-considered reasons for judgment. We quote the following portion thereof:
"Although there are numerous suits and third party demands between the parties, *446 the various demands and cross demands are disposed of by deciding the following issues. (1) Whether or not the Parish of Jefferson was negligent, which negligence proximately caused or contributed to the accident. (2) The negligence or contributory negligence of each driver. (3) Whether or not the Robertson Tank truck struck the Rizzo truck before Rizzo struck the Arrow truck (it being evidenced from the facts that Bernard was killed when the Rizzo truck came into contact with the Arrow truck).
The question of liability of the Parish is easily disposed of.
Assuming there was smoke mixed with fog, the evidence reveals that no fires were lit at the dump on that day, although there were a few small areas from the previous day's fire from which some smoke, though not in a large amount, was emanating. There was also testimony of parish employees at the dump that a black cloud literally settled over the dump area just before the accidents on the highway occurred, and that visibility in the dump was reduced to practically nil for a period of fifteen or twenty minutes until the cloud moved away.
There is no evidence in the record to establish weather conditions, humidity or whatever factors, if any, which should have been known or considered before lighting a fire the previous day, or making necessary steps to extinguish the fire lit the day before. The record is completely devoid of any evidence of negligence on the part of the Parish or its employees.
The remaining questions presented are disposed of by consideration of the evidence relating to the accidents.
All of the witnesses testified that from the overpass just west of the Huey P. Long Bridge to the scene of the accident there were patches of fog which were not dense enough to interfere greatly with visibility. The fog in which the accident occurred was extremely dense and described by some of the witnesses as the heaviest they had ever seen. The fact that it was not long standing, is shown not only by the testimony of the Parish employees but also by the testimony of Cannon, who passed the scene of the accident about midnight the night before, proceeding toward New Orleans. At that time there was no fog and the weather was clear. There is no question but that it was impossible to see or drive in the particular area where the accidents occurred at the time the accidents did occur.
Hughes, the driver of the Arrow truck, the first vehicle to enter the fog bank, testified that immediately upon reaching the scene of the accident he realized that the fog was too thick to permit him to drive through it. He entered the fog driving approximately thirty miles per hour, immediately slowed his vehicle and attempted to pull over to the shoulder on the right. He was generally familiar with the area, knew there were bridges and a ditch on the right shoulder, but not being certain of his exact position, was cautiously proceeding toward the shoulder of the road and believes his right front wheel had just left the pavement when his truck was struck an extremely heavy blow from behind. This is the only direct evidence of an impact in the right lane involving the Arrow truck. As there is no doubt that Bernard was killed when the Rizzo truck struck the Arrow truck, this was the accident in which Bernard was killed. The force of the impact knocked the rear end of the Arrow truck to the left where it was immediately struck by the Bonilla Pontiac, which stuck to the truck and was in contact with it after the accident occurred. Hughes was shaken up, got out of his truck, and hearing the injured people went back and borrowed a flare from a vehicle not involved in the accident to stop approaching traffic. The Court believes Hughes to be a forthright *447 witness testifying in accordance with his recollection of the events.
Bonilla and his son testified that they were driving in the left lane, approximately thirty miles per hour, and were being passed on the right by the Robertson tank truck, driven by Cannon, just as they entered the fog bank. The Robertson truck was empty at the time of the accident, and weighs 24,000 to 25,000 pounds. The length of the tractor and trailer is approximately forty feet.
Bonilla and his son both testified that immediately upon entering the fog bank there was a crash to the right; both glanced momentarily to the right and almost immediately struck the Arrow truck.
Cannon testified that after he crossed the Huey P. Long Bridge he was driving approximately forty miles per hour in the right lane. He further testified that just as he entered the fog bank he saw the Rizzo vehicle stopped in the right lane and that his truck ran into it.
Prior to reaching the fog bank, Cannon had stopped to switch gas tanks, at which time the Rizzo truck passed him. As Cannon later proceeded along the highway, the Rizzo truck, according to Cannon's testimony, was some distance ahead of him, approximately one-half mile. He saw the Rizzo truck enter the fog bank and disappear. Cannon did not testify that he decreased his speed, or that he applied his brakes. The evidence establishes that there were seventy-two feet of skid marks behind the tank truck, but there is no direct evidence by Cannon or Bonilla that Cannon applied his brakes prior to the impact. On the contrary, Bonilla testified that Cannon was passing his car on the right when the first accident occurred.
Dr. William H. Tonn, Jr., an expert in collision analysis, had examined certain photographs in the record and reached the conclusion from the examination of the photographs, and of the Robertson Tank truck only, that Robertson ran into Rizzo after Rizzo had struck the Arrow vehicle. In reaching this conclusion Dr. Tonn did not have the benefit of the testimony, nor does the Court know whether or not he had an opportunity to examine all of the photographs in evidence.
Hughes testified that his truck was struck only once and he heard only one crash before being struck by the Pontiac. Unless this testimony is impeached, or shown to be in error, it literally settles the principal issues in the case, because Hughes was struck only once in the right lane, and immediately thereafter was struck by the Bonilla vehicle in the left lane. The testimony is undisputed that the Bonilla vehicle and the Robertson truck entered the fog almost simultaneously, and Bonilla struck the Arrow truck immediately after the first collision. If, as contended by Robertson, the accident between the Rizzo truck and the Arrow truck had already occurred when Robertson entered the fog bank, Hughes would have been struck twice in the right lane and not only once. At the least there would have been two crashes in the right lane even if Hughes was not struck twice. There is no doubt that Hughes was struck in the rear when the tank truck entered the fog bank. Nor is there any doubt that Bernard was killed when his truck struck Hughes' truck in the rear. As the Court believes Hughes' testimony, the only other alternative is that Hughes was rendered unconscious by the first collision and more time elapsed than he thought had elapsed, and an additional accident occurred between the first collision and the time that his truck was struck by the Pontiac. The evidence does not support the contention that Hughes was unconscious, nor is his testimony in any manner impeached.
Cannon's testimony that the Rizzo truck entered the fog at some distance ahead of him, approximately one-half mile, furnishes the time element to support the theory of *448 two collisions. But it is immaterial whether Rizzo was one-half mile or any less distance ahead of Cannon. There is no evidence of a collision until Cannon entered the fog, and no dispute that Hughes was in the fog when the Rizzo truck entered it. Had there been a collision between Arrow and Rizzo before Cannon entered the fog, Hughes would have known it.
Cannon was grossly negligent in driving his heavy tractor-trailer rig into the fog at a speed of forty miles per hour having seen the vehicle ahead of him disappear into the fog, thereby knowing that visibility was completely impaired. Nor does he know whether or not he put on his brakes, although the evidence seems to indicate that he did. Since he did not apply his brakes before he entered the fog, he obviously applied them when the collision with the Rizzo truck was imminent. He testified that as he entered the edge of the fog he saw the Rizzo truck stopped in the right lane.
In order for the accident to have occurred as contended by Cannon's insurer, there would have had to be two separate accidents involving the Rizzo truck, first when it struck the Arrow truck, in which accident the driver was killed, and second, when it was struck from the rear by the tank truck. There is no evidence that this occurred, and on the contrary the evidence supports the Court's conclusion and Hughes' testimony that only one crash preceded the accident between the Pontiac and Hughes truck.
The only skid marks found at the scene were the marks behind the Robertson truck. The damage to the front of the Rizzo truck was caused when it struck the Arrow truck. Had the Rizzo truck struck the Arrow truck before it in turn was struck by the Robertson truck, the damage to the front of the Rizzo truck would already have had occurred when it was struck by the Robertson truck. An examination of the photographs (Rizzo-Bernard 7) shows the right wheel of the Rizzo truck just off the edge of the concrete on the shoulder of the road, turned slightly to the right. Had it been struck in this position some mark would have been left behind the right front wheel, as the truck had to move when it was struck by the tank truck. An examination of the photographs (Rizzo-Bernard 4 & 5 and Robertson 2) does not reveal any skid marks behind the left front wheel of the Rizzo truck, which is turned on a considerable angle to the left. Those photographs, together with Rizzo-Bernard 6 and other photographs in evidence show the amount of damage to the front of the Robertson truck. It is not logical to assume that when Rizzo's truck was struck in the rear by the tank truck weighing 25,000 pounds it did not budge one inch. This conclusion is partially corroborated by Dr. Tonn's testimony. Portions of the skid marks presumably left by the Robertson truck, according to Dr. Tonn, show it was in collision. Cannon testified he saw the Rizzo truck ahead of him. Dr. Tonn testified with reference to the skid marks and it is therefore apparent that if Cannon's brakes were applied they were applied just prior to the collision with the Rizzo truck, causing the marks identified by Dr. Tonn to be made while Cannon was in collision with the Rizzo truck. All of the evidence and the circumstances of the case lead to the conclusion that the 25,000 pound tank truck pushed the Rizzo truck into the rear of the Arrow truck causing the damage to the front of the Rizzo truck, and propelling the Arrow truck into the left lane. The accidents were practically simultaneous thus accounting for why Bonilla and Hughes heard only one crash.
There is no doubt of the negligence of Cannon.
Hughes did everything he could to avoid an accident in attempting to get off the highway. Before he had an opportunity to do so the accident occurred. Cannon *449 testified the Rizzo truck was stopped, but it may have been proceeding slowly. That was the duty of the driver under the circumstances of visibility then existing. There was no negligence on the part of Bernard.
Bonilla may have been negligent in entering the fog at thirty miles per hour. He should have seen the Arrow truck disappear ahead of him. The accident occurred almost simultaneously with his entry into the fog, and had the Arrow truck been stopped in his path or proceeding at a slow rate of speed, Bonilla may have been responsible for whatever damages occurred. But the negligence of Cannon intervened between Bonilla's actions and the accident. Cannon created the condition which resulted in the accident, i. e., driving into a dense fog, having knowledge that he could not see into it, with a 25,000 pound vehicle at a speed of forty miles per hour."
We do not agree with what the trial court said relative to the absence of marks behind the slightly turned right front wheel of the Rizzo truck as shown in one of the photographs. It is true that if the Rizzo vehicle had been struck in that position some marks would have been left behind the wheel because the truck had to move when the large, heavy Robertson truck ran into it. But the photograph, of course, was taken after the accident; the position of the right front wheel at the time of the impact is not known; and without such knowledge the absence of marks behind the wheel appears to be of no particular significance. We agree with all of the remainder of the quoted reasons for judgment and adopt the same as our own.
Of particular significance is the fact that none of the witnesses, Hughes, the two Bonillas, or even Cannon himself, heard more than two crashes, one of which occurred when the Bonilla automobile ran into the Arrow truck.
Quite clearly, the driver of the Arrow truck, Hughes, was not guilty of negligence; as soon as he was able to realize he was in the heavy fog bank, he reduced his speed and began an attempt to get over on the shoulder of the road where he planned to stop until conditions improved, all acts of a prudent and cautious driver. As Bonilla had a clear road ahead in his lane of travel, and as he could not have anticipated that a vehicle in the next lane to his right would be propelled into his lane, his negligence, if any, could not have been a proximate cause of the collision between his car and the Arrow truck. Nor can there be any liability on the part of Fireman's as liability insurer of the Parish of Jefferson. In this court all parties concede the record discloses there was no negligence on the part of the parish employees at the dump and there is no evidence that smoke from the dump had ever affected visibility on the highway.
There is no doubt about the negligence of Cannon, the driver of the Robertson truck. In driving his large tractortank trailer into the heavy fog bank at a speed of 40 miles per hour, knowing the fog bank was there because he had just seen the Rizzo truck disappear into that bank, he was guilty of gross negligence. Ardoin v. Southern Farm Bureau Casualty Ins. Co., La.App., 133 So.2d 129; Washington Fire & Marine Insurance Co. v. Hamilton, La. App., 106 So.2d 829.
We now address ourselves to the question of quantum as presented by ABC, Transport and Cannon in their appeal and by the Bernards in their answer to that appeal. The appellants contend the award for future loss of support to the Bernards is excessive. The Bernards seek an increase in the amount awarded to each of the children for loss of love, affection and guidance. We have been presented with no other issues involving quantum.
At the time of his death Bernard was 49 years of age, with a life expectancy of 21.63 years as shown by the mortality table contained in LSA-R.S. 47:2405. He *450 was earning approximately $4,000 per year and was survived by his widow and seven children. The awards (the amounts for love and affection include guidance in the awards to the minors other than Mrs. Guillot) are as follows:

 Loss of love Loss of
 and affection support
 ------------- -------
 Mrs. Bernard, the widow $15,000 $25,000
 Mrs. Barbara Bernard Ber,
 Age 25 $ 3,000 -----
 Mrs. Juanita Bernard Dupre,
 Age 22 $ 3,000 -----
 Mrs. Claudia Bernard Guillot,
 Age 17 $ 3,500 -----
 Maybelle Bernard,
 Age 20 $ 3,500 $ 500
 Claude Bernard, Jr.,
 Age 17 $ 5,000 $ 2,000
 Hope Bernard,
 Age 14 $ 6,500 $ 5,000
 Herbert Bernard,
 Age 9 $ 7,500 $10,000

With regard to loss of support, our jurisprudence is to the effect that it is impossible to determine such loss on any scientific basis and no mathematical formula can be used for calculating the same; a determination can be made only on the basis of what the court, in its sound discretion, considers to be a fair and reasonable amount. Pennington v. Justiss-Mears Oil Company, 242 La. 1, 134 So.2d 53; Brown v. S. A. Bourg & Sons, Inc., 239 La. 473, 118 So.2d 891; McFarland v. Illinois Central Railroad Company, 241 La. 15, 127 So.2d 183, 87 A.L.R.2d 246; Penn v. Inferno Manufacturing Corporation, La.App., 199 So.2d 210. Loss of love and affection, of course, is not susceptible of exact measurement; the awarding of damages therefor also addresses itself to the wide discretion of the trial court. Hampton v. Security Storage and Van Company, La. App., 148 So.2d 788; Freeman v. United States Casualty Co., La.App., 88 So.2d 423.
We have considered similar cases in our jurisprudence as relevant only for the purpose of deciding whether there has been an abuse of the trial court's discretion. While the total award for loss of support to Mrs. Bernard, individually and as natural tutrix appears to be somewhat higher than such awards in other similar cases, and the awards to the children for loss of love and affection, in some instances, appear to be somewhat lower than that awarded in other similar cases, we are of the opinion there has been no abuse of the discretion vested in the trial court. See Murphy v. Fidelity & Casualty Co. of New York, La.App., 165 So.2d 497; Landry v. American Surety Company of New York, La.App., 149 So.2d 738; Jones v. Lee, La. App., 144 So.2d 405; Renz v. Texas & Pacific Railway Company, La.App., 138 So.2d 114; Swillie v. General Motors Corporation, La.App., 133 So.2d 813; Dauzat v. Great American Indemnity Company, La.App., 130 So.2d 805.
For the reasons assigned, the judgments appealed from are affirmed.
Affirmed.