BOUTALL, Judge.
This is a suit by a landlord, Peter Mil-ano, against his tenants, American Rent-All, Inc., Clayton J. Charbonnet, and the tenants’ insurer, The Fire and Casualty Company of Connecticut, for damages occasioned plaintiff as a result of a fire which partially destroyed the landlord’s building. The landlord’s insurer, Employers Mutual Fire Insurance Company, has intervened for the amount paid the landlord under a policy with him. The tenant has reconvened against the landlord for damages which he suffered as a result of the fire.
The major point at issue is the location of the origin of the fire and the cause thereof. The trial judge determined that the fire started not on the leased premises, but in a two-story shed owned by another person adjacent to the leased premises and spread to the leased premises as outlined by an expert witness of defendant, George Martinsen, Jr., and that the fire was not caused by the fault or neglect of the defendants or any of their employees or agents. Accordingly he rendered judgment dismissing plaintiff’s suit, and also dismissing defendant’s reconventional demand. We agree with the judgment, although we do not concur in the finding as to the location of the origin of the fire.
There were a number of witnesses produced in this case, and there are some 7 volumes of testimony, together with numerous exhibits. Basically the witnesses comprise three classes: 1) persons who lived in the vicinity; 2) firemen who came upon the scene in the course of the fire; and 3) expert witnesses who examined the premises in an effort to determine the causes of the fire. A thorough examination of this voluminous evidence convinces us that it was error for the trial judge to accept the testimony of the expert witness, Martinsen, that the fire started in the adjoining shed, as we believe the overwhelming weight of the evidence is to the effect that the fire started very high up near the roof in the rear corner of the leased premises near the shed. It would serve little purpose to offer a resumé of the testimony of each witness or perhaps to quote isolated answers from such testimony, in order to support this position. The parties hereto have referred us both in brief and in argument to numerous portions of the testimony. We think a fair summary of the testimony of the neighbors *148 shows that there is a range from several witnesses who testified that they saw the fire at its beginning, that smoke and/or flames were coming from the leased premises, and that at that time the shed was not involved with fire; all of the way down through those witnesses who saw the smoke and/or flames at various stages of the progression of the fire up to the time the firemen arrived. These latter witnesses testified that the fire appeared to be coming from the building, and not from the shed. None of these witnesses testified that the fire started in the shed.
The testimony of the firemen likewise varies dependent upon their time of arrival and their involvement with different portions of the fire. With the possible exception of one witness, whose comments were susceptible of two interpretations, none of the firemen testified that the fire began in the shed. Their testimony all supports the theory that the fire started in the leased premises.
Lastly we come to the testimony of the experts. In this area there is a direct conflict of opinion. Mr. Martinsen, who was produced by the defendants, testified on the basis of his examination of the premises several weeks after the fire, and based upon a number of photographs which he caused to be taken. He concluded that the fire started in the adjoining shed. As opposed to this, plaintiff produced two expert witnesses, Chief Edward M. Ritter and Inspector Esso Plaisance, both of whom testified that the fire started in the léased premises. In comparing the testimony of these witnesses, we note that the two inspectors with the New Orleans Fire Department were present at the scene while the fire was being fought and thereafter. Their conclusions were based upon the physical evidence .found as well as statements by several of the witnesses and firemen who observed the progress of the fire. As opposed to this, the conclusion of Mar-tinsen is based upon an examination of the premises several weeks later, at a period when most of the debris had been cleared away and upon photographs taken at that time. It should be noted that the testimony of the department fire inspectors is in accordance with the testimony of the various witnesses and the wind direction at that particular time. Not only is- the testimony of Martinsen at odds with these factors, but he considers that one of the basic foundations for his opinion is that the shed was completely burned to the ground and destroyed by fire. However, the testimony of the firemen who participated conclusively shows that the shed was knocked down by their application of high pressure hoses after it became involved with the fire and became a danger to the firemen fighting the fire in that vicinity. Under these circumstances, it does not appear to us that the opinion of the expert Martinsen should prevail. Mayon v. Delta Well Logging Service, Inc., 167 So.2d 418 (La.App. 1st Cir. 1964) ; Keener v. Fidelity and Casualty Co. of N.Y., 96 So.2d 509 (La.App. 2nd Cir. 1957) ; Prejean v. Trinity Universal Insurance Company, 210 So.2d 395 (La.App. 3rd Cir. 1968); Bonilla v. Arrow Ford Distributors, Inc., 202 So.2d 438 (La.App. 4th Cir. 1967).
We thus conclude that the fire started in the leased premises at a point near the roof area of the building in the rear corner area. However, we find no evidence in the record which discloses the cause of the fire. It is urged to us that the rationale of the decisions in the cases of Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972) and Hanover Insurance Company et al. v. Jacobson Young, Inc., et al., 294 So.2d 564 (La.App. 4th Cir. 1974) are controlling of the issues herein. We cannot agree. While we agree with the rationale of those cases, we cannot reach a conclusion commensurate with the judgments rendered therein. The plaintiff bears the burden of proving negligence by a preponderance of the evidence, direct or circumstantial. There is no direct evidence in this case, and we must resort to the circumstances surrounding the happening in order to de *149 termine a probable cause. It is sufficient that the proof constitutes a preponderance of the evidence when such proof, taken as a whole, shows that the fact or causation sought to be proved is more probable than not. Thus we must determine whether the evidence indicates that the defendant’s negligence was the most plausible or likely cause of the casualty and that no other factor can as reasonably be ascribed as the cause.
In this case, the evidence shows that the fire took place on a Sunday evening at a time when no employees of the' defendant were present. Although there was some showing that in certain areas there was flammable materials stored, electrical wiring which had been overloaded, heaters installed on the premises, etc., there is absolutely no showing that indicates that any of these were the cause of the fire as the fire started in another area. There is nothing in the evidence to indicate that the defendants had made any installation or conducted any particular operation at the location where the fire is generally conceded to have originated. We can no more conclude that the fire started as a result of any negligence of defendant than we can presume that the fire started as a result of some defect in the building owned by the landlord, or that some sort of spontaneous or unexplained combustion may have occurred in that area. Lacking this evidence, we cannot conclude that either plaintiff in his original demand, or the defendant in his reconventional demand should recover.
Plaintiff nevertheless called to our attention the terms of the written lease between the parties, contending that under its provisions, the defendants are entirely responsible for the safety of the building. An examination of that lease convinces us that defendant does not undertake to be responsible for everything that happened in that building. There is no showing that the fire started as a result either of something that the defendant installed, or as a result of any defect in the building which he was required to assume the maintenance of. We agree with the trial judge’s finding on this point.
For the above reasons we are of the opinion that the judgment appealed from should be affirmed at appellant’s cost.
Affirmed.