THOMPSQN, J.
The defendant was secretary and treasurer of the Ideal Savings & *642 Homestead Association, a corporation domiciled in this city. His term of service was continuous from January 1, 1916, to March 21, 1922, during which period he is charged by information with having embezzled the sum of $S3,10S.05, belonging to the Association, which had been intrusted to him or had come into his possession as secretary-treasurer. He was tried, convicted, and sentenced to hard labor in the penitentiary for not less than four nor more than six years. He complains of errors committed in the court below to his prejudice, and'which are incorporated in six separate bills of exception.
Bill No. 1.
This bill is leveled at an alleged abuse of discretion by the trial judge in refusing to force the district attorney to furnish a bill of particulars. The motion asked that defendant be informed (1) as to the total sum of money alleged to have been embezzled in each of the years designated in the information ; (2) the names of the persons or corporations from whom it was alleged-the defendant received the moneys alleged to have been embezzled; and (3) the dates upon which it is alleged the moneys were received by the defendant and the accounts for which it is alleged said money was paid to the said defendant or received by him.
The district attorney in answer to the motion stated that he was unable to furnish the particulars requested, for the reason that the manner in which the books had been kept by the defendant made it impossible to obtain such information and that the amount could only be shown in the total. The district attorney’s statement is ''sustained by the report of a certified public accountant attached to the answer of the district attorney. The district attorney, however, tendered to the defendant and his attorneys for inspection all of the records and books of the association covering the entire period, and which showed all of the recorded transactions of the defendant in his capacity of secretary-treasurer.
The answer of the district attorney, taken in connection with the report of the-accountant, and the charge, which followed the words of the statute and is legally sufficient, we think furnished the defendant with all the particulars of the alleged offense of which-the nature of the case was susceptible or that could be required of the state in advance of the trial.
The transactions involving the misappropriation of the funds were continuous and covered a period of several consecutive years, and the books of the defendant wore so kept as to render it impossible to give the name of the person from whom any particular sum was received; or the date or particular transaction in which the same was received by the defendant nor could it be £hown when and from what transaction any particular sum was embezzled.
The state, in tendering the records and books to the defendant, laid bare its entire case, for it was information and data largely if not wholly from these books and records that the state relied on to make out its case. There'was nothing more that could be required of the state.
“The state cannot be tied down and committed to unnecessary and dangerous averments as to details of the crime charged.” State v. Goodson, 116 La. 399, 40 South. 771.
The matter of furnishing a bill of particulars rests largely in the discretion of the trial judge, and his ruling will not be disturbed unless there is manifest error, and particularly in the absence of a clear showing that the defendant was prejudiced. 1 Bishop, Crim. Proc. 643. State v. Buhler, 132 La. 1066, 62 South. 145.
The case as presented to the trial judge on the motion for a bill of particulars fully answered the constitutional requirement, *644 “that the accused shall be informed of the nature and cause of the accusation against him.”
Bills Nos. 2 and 3.
These bills were reserved to the action of the court in refusing to grant defendant a delay of two full days in order that he might be served with a copy of a jury list containing not less than 75 names.
The defendant was served two full days before the trial with a list of 38 names composing the panel for the week for which the defendant was to be tried, and was in fact tried. The particular complaint is that the law required a panel of 75 jurors for the section of the court before which defendant was to be tried, and that the action of the court in reducing that number to 38 was illegal and occasioned an irreparable injury to the accused, denying to him that protection expressly accorded him by law.
Act 114 of the Extra Session of 1921 provides that not earlier than the 15th day of each calendar month, and not later than the 25th day of each "calendar month, the commissioners, together with the sheriff, shall draw not less than 150 names, when jurors are to be summoned for service in only two sections of the criminal district court, and the persons whose names shall be so drawn shall constitute the petit jury for the session of the court next succeeding said drawing. The commissioners shall assign not less than 75 of said jurors to each section of the criminal district court for which said drawing shall have been held.
The act also provides that the jury commissioners shall qualify every person before selecting him as a juror, but nothing in the act shall be construed as to deprive the judge of the right to decide upon the competency of each juror.
In accordance with the terms of the act the jury commission drew the 150 jurors and assigned 75 of that number to service in section A of the criminal district court. We do not understand that there is any complaint of the action of the jury commission. The contention, of counsel and the special complaint may be better stated in an excerpt from counsel’s brief:
“We do not believe that this clause [reserving to the judge the right to decide upon the competency of each juror] confers upon the trial judge the right to select a jury. It simply gives him a right to pass on the qualifications of a juror. In other words, if the commissioners should assign to the court seventy-five persons for jury duty and it should occur that some of these persons, thus assigned, were not citizens, or had been convicted of a crime punishable by hard labor in the state penitentiary, and had not been pardoned, and this had 'escaped the scrutiny of the jury,commissioners, the judge would have the right to exclude an individual of that kind.”
If counsel’s interpretation of the jury law were sustained, the trial judge would be stripped entirely of all authority and discretion in the matter of excusing jurors, except for the causes of disqualification provided by law and which were overlooked by the commissioners. There is nothing in the jury act which takes away from the judge the discretion to excuse jurors from service for any reason that to him may be proper and satisfactory. And the exercise of this discretion will not be interfered with on appeal unless it clearly appears that the right has been abused or that the defendant has been prejudiced thereby. State v. Ardoin, 136 La. 1086, 68 South. 133.
“The defendant’s right is that of eliminating incompetent jurors — not of selecting jurors of his choice.” State v. Thompson, 116 La. 829, 41 South. 107.
In the case of State v. Aspara, 113 La. 944, 37 South. 883, one of the complaints was that the panel was composed of 69 jurors instead of 75, as required by law. It appears that the commissioners had drawn the names of 174 persons for section B, of whom 157 reported for duty, and of that number *646 71 were impaneled, the others “for good and sufficient reasons” having been excused by the court. The counsel in that case contended as the counsel contends here that:
“The imperative mandate of the statute is that from the whole venire returned into court, after the selection of a grand jury where a grand jury is to be selected, the remaining persons shall compose the petit jurors for the month.”
The court in answer to the contention had this to say:
“The position of counsel is not sustained by the record, even though their premises should be conceded, since we are informed only that the jurors were excused ‘for good and sufficient cause,’ and for aught we know, that may mean ‘death or sickness.’ But if death and sickness are sufficient to authorize the judge to excuse a juror, why may not flood, or famine, or some other cause furnish the same authority, i since all are equally outside the statute itself. We think the construction contended for inadmissible, because, among other reasons, it would deprive the judges of the criminal courts of a necessary discretion in the matter of holding or excusing jurors, and would confer no benefit upon any one.”
There is nothing in the record in the instant ease to show upon what ground the 37 jurors drawn to make up the panel of 75 were excused by the court, and in the absence of such showing we must assume that the trial judge had good, sufficient, and satisfactory reasons for excusing them, and having excused them it was useless to have included their names on the list which was served on the defendant.
It is not necessary here to decide, and we do not decide, the question of the right of the judge to reduce the panel of jurors from 75 to 38 on his own motion without application of the jurors themselves to be excused and without taking into consideration the question of their qualifications and competency. That question is not before us.
Bill No. 4.
This bill is to the ruling of the court in excluding the testimony of Dr. Hamilton P. Jones. The proffered evidence, as stated by counsel at the time, was offered for the purpose of showing that the defendant’s physical condition, for not less than and perhaps three years prior to the time the charges were made against him, was bad and that the amount of work he was obliged to perform, as secretary-treasurer of the homestead association, was impossible to be performed by him on account of his general physical condition.
The ruling of the court was entirely proper. The testimony was clearly irrelevant and inadmissible. The excessive amount of labor required of defendant and his incompetency to keep his accounts straight, due to his ill health and bad physical condition, not producing mental aberration, could afford no legal excuse for, nor defense against, the crime of misappropriating the funds intrusted to him. There was no defense of insanity, nor any pretense' that the disease with which the defendant is said to have been affected at times produced any degree of mental irresponsibility.
Bills Nos. 5 and 6.
These bills were reserved respectively to the overruling of a motion in arrest of judgment and a motion for a new trial. The motions contain only matters embraced in the other bills which we have disposed of.
We can find no sufficient reason for disturbing the verdict and sentence appealed from, and the same are affirmed.