179 So. 64

**STATE v. EZELL.**

No. 34666.

Feb. 7, 1938.

Flowers & Russell, of Jena, for appellant.

Gaston L. Porterie, Atty. Gen., James O'Connor, Asst. Atty. Gen., Harry Fuller, Dist. Atty., of Winnfield, and Vinson M. Mouser, Asst. Dist. Atty., of Columbia, for the State.

PONDER, Justice.

The defendant, Jim Ezell, and one Mayo Keene were indicted for stealing four head of cattle. Upon arraignment Mayo Keene entered a plea of guilty, and the defendant, Jim Ezell, entered a plea of not guilty. The defendant, Jim Ezell, was tried, convicted, and sentenced to the penitentiary. From the conviction and sentence the defendant prosecutes this appeal.

During the course of the trial, the defendant's counsel reserved three bills of exceptions to rulings of the court.

Bill of exception No. 1 was reserved to the overruling of defendant's motion for a bill of particulars. It is alleged in the motion that the indictment charges him with the larceny of one cow, one steer, and two heifers, and does not sufficiently describe the cattle to enable the defendant to identify the cattle and properly prepare his defense, for the reason that the cattle are not described as to mark, brand, age, or color.

The defendant was arraigned on October 9, 1937, under the indictment, and the case was fixed for trial October 26, 1937. The motion for bill of particulars was filed on the day of the trial after it had been ascertained that all of the witnesses were present and the State had announced ready for trial. Counsel for defendant cites no authorities in support of his contention.

Upon examination of the indictment, we find that it is alleged that the cow was the property of D. Floyd, and that the steers and two heifers were the property of persons unknown to the grand jury. The trial judge in his per curiam states that there was no dispute over the description of the cattle charged to be stolen. In the case of State v. Gould, 155 La. 639, 99 So. 490, 491, this court stated:

"The matter of furnishing a bill of particulars rests largely in the discretion of the trial judge, and his ruling will not be disturbed unless there is manifest error, and particularly in the absence of a clear showing that the defendant was prejudiced. 1

Bishop, Crim.Proc. 643. State v. Buhler, 132 La. [1065], 1066, 62 So. 145.

"The case as presented to the trial judge on the motion for a bill of particulars fully answered the constitutional requirement, 'that the accused shall be informed of the nature and cause of the accusation against him.' "

In article 235 of the Code of Criminal Procedure where it sets out certain forms of indictments that may be used, it is provided:

"Provided, That the District Attorney, if requested by the accused prior to arraignment may be required by the Judge to furnish a bill of particulars setting up more specifically the nature of the offense charged."

Article 288 reads:

"Defects in indictments can be urged before verdict only by demurrer or a motion to quash, and the accused is not entitled to any bill of particulars as to the subject matter charged in the indictment, but the trial judge may, in his discretion, require the district attorney to file in the case such data as, in the opinion of the judge, may be sufficient."

The doctrine laid down in State v. Gould, supra, has not been changed by articles 235 and 288 of the Code of Criminal Procedure for the reason that in the proviso of article 235 the district attorney "may" be required to furnish a bill of particulars, and in article 288 of the Code of Criminal Procedure the trial judge may in his discretion require the district attorney to file such data

as the judge thinks might be sufficient. In articles 235 and 288 of the Code of Criminal Procedure it is left to the discretion of the trial court. There is no contention herein that there was any abuse of this discretion and no showing made that the defendant has been prejudiced by the overruling of the motion.

The defendant's bill of exception No. 2 has reference to the method used in the examination of the respective jurors on their voir dire. Each juror was first tendered to the district attorney for examination and then tendered to counsel for the defendant for examination, and, after the juror had been examined by both sides, the prospective juror was tendered to the district attorney for acceptance or rejection, and, if accepted by the district attorney, he was tendered to defendant's counsel for acceptance or rejection. During the course of the trial there were only two jurors rejected by the district attorney. The trial judge states in his per curiam that the district attorney rejected the two jurors at the close of his examination without tendering them to counsel for defendant for examination. From an examination of the notes of evidence, the basis of bill of exception No. 2, and the per curiam of the trial judge, this bill of exception was not reserved to the method used in examining these two jurors. As will be seen from the notes of evidence the bill of exception was reserved to the method of examining the other prospective jurors who were accepted by the district attorney. The identical question presented here was determined by this court in the case of State v. Ussery, 178 La. 593, 152 So. 302, 303, wherein this court stated:

"It is plain, therefore, that the tendering of a juror to the defendant's counsel, by the district attorney, after he has examined the juror on his voir dire, is in itself an acceptance of the juror by the district attorney, subject, of course, to the rights which are accorded to both sides under articles 358 and 359 of the Code of Criminal Procedure. The only way that a cause for complaint on the part of the defendant could arise in such a proceeding would be for the district attorney to attempt to withdraw his acceptance of the juror, or to proceed in a way not consistent with his acceptance of the juror, after tendering him to the defendant's counsel for examination."

Bill of exception No. 3 was reserved to the overruling of defendant's objection to the testimony of the witness, W. H. Bishop, town marshal of Jena, with respect to a conversation which he had with the defendant. The examination of the witness, Bishop, leading up to the conversation was as follows, viz.:

"Q. Mr. Bishop, you have stated that you began investigating this particular offense on the night of the 19th of June, and some times thereafter, which was also sometime before the arrest of the defendant, Jim Ezell, you had a conversation with Mr. Ezell on Oak Street near the mouth of the Alley by Mr. Taylor's Store? A. Yes, sir.

"Q. You have already stated that the conversation dealt with this particular case. That's correct, is it? A. Yes, sir.

"Q. Was any one else present when this conversation was had? A. No, sir.

"Q. Did you seek Mr. Ezell out and start the conversation or did he seek you out and start the conversation? A. Mr. Ezell, came to me where I was standing back of a car or truck.

"Q. Did you notice anything particular about Mr. Ezell's condition? A. He was a little bit intoxicated.

"Q. Do you remember the substance of what he said in connection with this case? A. Yes, sir.

"Q. Just state to the jury what he had to say?"

Counsel for the defendant objected to the witness, Bishop, testifying as to the conversation between him and the defendant on the ground that the proper foundation had not been laid for the offering of a confession or admission, which objection was overruled by the court, and the witness testified as follows, viz.:

"A. The correct introduction of the conversation I forget now, but some how he entered or approached the conversation and said 'I understand through Mr. Slay, that you are digging into some cattle I brought over to Alexandria awhile back,' and during the course of the conversation, he used quite a few oaths, he said 'I bought those cattle from a negro for four cents a pound and carried them to Alexandria and sold them for four and a half cents a pound.' Then with another bad word, he said 'You don't blame me for making that kind of a deal, do you?' I said 'No.' We talked on there for a few minutes and I said 'Jim,

you have been accused in this matter and if you can get by you had better go ahead and get by and stop talking about it.' He said 'That's the only way I am dealing with them is buying them and carrying them to Alexandria and selling them.' "

Counsel for the defendant contends that it must be affirmatively shown that the statement was made free and voluntarily, citing article 451, Code of Criminal Procedure, which reads:

"Before what purposes to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises."

There is no merit in this bill for the reason that the defendant voluntarily came to the witness as will be seen by the above-quoted testimony. Even conceding that the statement was a confession or admission, the evidence shows that it was free and voluntary.

The counsel for the defendant urges for the first time in his brief on this appeal another ground why this testimony should not have been admitted. Counsel urges that the witness stated that he only remembered a part of the conversation between him and the defendant. This ground was not urged in the lower court. However, if it had been timely urged, there is no merit in the contention for the reason that the witness testified that he remembered the substance of what was said.

The defendant filed a motion in the lower court for a new trial based on the above-

mentioned bills of exceptions. The motion presents no new issue to be determined.

For the reasons assigned, the verdict and sentence are affirmed.