465 So.2d 769 (1985)
STATE of Louisiana
v.
John SIMMS.
No. 84-KA-210.
Court of Appeal of Louisiana, Fifth Circuit.
February 11, 1985.
*771 Harry J. Morel, Jr., Dist. Atty., Gregory C. Champagne, Asst. Dist. Atty., Twenty-Ninth Judicial Dist., Hahnville, for plaintiff-appellee.
Gordon Hackman, Boutte, for defendant-appellant.
Before KLIEBERT, BOWES and CURRAULT, JJ.
CURRAULT, Judge.
As a result of a shooting which occurred on June 4, 1981, defendant John Simms was indicted by a grand jury for the second degree murder of Carl Hodenfield pursuant to LSA-R.S. 14:30.1. A jury trial was held on June 28, 29 and 30, 1983, following which defendant was convicted of the charge. A motion for new trial was filed on September 16, 1983. After several continuances and various motions, the hearing was held on February 27, 1984 and defendant's motion was denied. Defendant was then sentenced in accordance with LSA-R.S. 14:30.1 to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Thereafter defendant perfected this appeal of his conviction.
The evidence herein shows that John Simms and Bonnie Warren lived together for five to five and a half years and two children were born of the relationship.
During the first few months of 1981, the couple resided in a trailer park in Des Allemands, Louisiana with their two children and Ms. Warren's son from a previous marriage, Joseph Warren who was eight years old at that time.
From April of 1981 to June, 1981, the relationship deteriorated to such an extent that Ms. Warren moved out of the trailer taking the couple's two children with her. In response to an offer made by a mutual friend, Carl Hodenfield, Ms. Warren and the children moved into Mr. Hodenfield's trailer and thus resided with him. Although unhappy about the turn of events, Mr. Simms continued to communicate with Ms. Warren regarding their relationship and the children's welfare.
On June 4, 1981, defendant drove to Mr. Hodenfield's trailer in his newly purchased pickup truck in order to invite Ms. Warren and the children to lunch. Defendant was planning to leave the state and attempted to convince Ms. Warren to return to him. After his unsuccessful attempt to effect a *772 reconciliation, he returned Ms. Warren and the children to Mr. Hodenfield's trailer, but stated he would return the next day for a visit prior to leaving the area.
Later that same day, defendant returned to the trailer park to visit a friend, Floyd Jordon. On his way to Mr. Jordon's, he passed by Hodenfield's trailer noticing that both Ms. Warren and Mr. Hodenfield were at home. After his visit he again drove past the Hodenfield trailer. At that time he saw that Mr. Hodenfield's car was not parked there, consequently he stopped to speak to Ms. Warren. Instead of getting out of his truck, he honked the horn and Ms. Warren came out, walked to the driver's side of the vehicle and the couple then held a conversation through the window of the truck. As he prepared to leave, he noticed Mr. Hodenfield's car approaching from several hundred yards away. He did not attempt to drive away and remained seated in the vehicle. Ms. Warren also remained standing next to the driver's side of the truck.
Mr. Hodenfield drove up, parking his car to the rear on an angle slightly blocking, to a small degree, Mr. Simms' backward exit. Mr. Hodenfield got out of his car and began moving toward defendant's vehicle, at which time defendant shot Mr. Hodenfield once in the abdomen. The victim continued to approach the truck and as Mr. Hodenfield attempted to reach inside the truck, defendant shot him again in the face. The testimony was conflicting as to Mr. Hodenfield's manner when he got out of his automobile.
In this respect, defendant alleged that Mr. Hodenfield got out of the car and lunged toward the pickup truck in an aggressive and threatening manner. Defendant testified that he yelled at the victim not to come over to him. He further testified that Mr. Hodenfield continued to lunge toward the truck; thus defendant shot Mr. Hodenfield once. After the first shot he stated the victim kept coming and he shot again when Mr. Hodenfield reached the window of the truck and put his arm inside. After the second shot, Mr. Hodenfield fell to the ground and defendant drove to a telephone to call for an ambulance and to report to the police. He then returned to the scene of the shooting.
Two other witnesses at the scene and Ms. Warren contradicted defendant's testimony regarding the victim's actions.
Jonathan and Jerry Bush, who are brothers, were seated in the victim's car at the time of the shooting and had an unimpeded view of the incident. Ms. Warren was near the window of the truck. Both the Bush brothers and Ms. Warren testified that Mr. Hodenfield was unarmed and that he walked toward the pickup truck in a nonaggressive, normal manner with his hands at his sides. Jonathan Bush additionally stated that after the first shot striking Mr. Hodenfield, he called out "Hey man" to defendant.
The testimony of Ms. Warren and other witnesses indicated defendant had been drinking alcohol prior to the incident. Ms. Warren also stated she noticed during her conversation with Mr. Simms that defendant appeared to be concealing something on the front seat of the vehicle because of the way he was holding his arm.
Finally, Patsy Soudelier and Lillian Barbow testified that on several previous occasions after he had been drinking, defendant threatened to shoot Mr. Hodenfield. One of those occasions occurred on the day of the shooting at which time Ms. Barbow testified defendant stated "Tonight's the night." She stated defendant indicated he had a gun. Neither of the witnesses however believed defendant would carry out the threat.
After the defendant returned to the scene of the shooting, the police arrived; the investigation proceeded and Mr. Simms was ultimately indicted by the grand jury and subsequently convicted.
On appeal, defendant presents the following assignments of error:[*]
*773 (1) The trial judge erred in instructing the jury that it could consider only the evidence presented at trial, and in failing to instruct on failure of the state's burden of proof.
(2) The trial judge erred in failing to grant a new trial as a result of the prosecutorial tactics.
(3) The trial judge erred in failing to give the jury additional instructions when it asked for additional instructions on "guilty" and "guilty of manslaughter."
(4) The trial judge erred in failing to grant a new trial because the state arbitrarily withdrew offered plea bargains.
(5) The trial judge erred in failing to grant a new trial because of ineffective assistance of counsel.
(6) The trial judge erred in failing to grant a new trial because of all the foregoing, cumulative errors.
On the first assignment of error, appellant argues that the trial court erred in instructing the jury that it could consider only evidence presented at trial, and in failing to instruct on the failure of the state's burden of proof.
In this regard, appellant argues that the law provides that a jury instruction prohibiting the jury from going beyond the evidence to seek for doubts upon which to acquit the defendant is error. State v. Mack, 403 So.2d 8 (La.1981), State v. Gibbs, 355 So.2d 1299 (La.1978), and State v. Vessell, 450 So.2d 938 (La.1984).[1] The trial judge herein charged the jury as follows in relationship to the duty of the jurors as fact finders:
"You must determine the facts only from the evidence presented. The evidence which you should consider consists of the testimony of witnesses (and of exhibits such as writings and physical objects) which the court has permitted the parties to introduce.
"You must not consider any evidence which was not admitted, or which you were instructed to disregard, or to which an objection was sustained.
"You alone shall determine the weight and credibility of the evidence. Your job is to find the truth.
"As the sole judges of the credibility of witnesses and the weight their testimony deserves, you should carefully scrutinize the testimony given and the *774 circumstances under which the witness has testified. In evaluating the testimony of a witness, you may consider his ability and opportunity to observe and remember the matter about which he testified, his manner while testifying, any reason he may have for testifying in favor of or against the state or the defendant, and the extent to which his testimony is supported or contradicted by other evidence.:
Under the portion of the jury charges designated "Burden of Proof: Presumption of Innocence", the following language is found:
"The burden is upon the state to prove the defendant's guilt beyond a reasonable doubt. In considering the evidence, you must give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence." (Emphasis added)
In the cases cited by appellant, State v. Mack, supra, and State v. Vessell, supra, the Louisiana Supreme Court found error where the trial court instructions failed to relate the provision of LSA-C.Cr.P. art. 804 A(2) concerning the jury's duty "to give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence...." In Gibbs, the court acknowledged that the particular instruction complained of by itself was erroneous, but further found that as the trial court read LSA-C.Cr.P. art. 804 A(2) to the jury, the charge as a whole adequately covered the matter.
After our review of the charges herein, we likewise find that the charge as a whole delineates both the state's burden of proof and the duty of the jury to consider the evidence or lack of evidence in its determination of reasonable doubt. Thus, the trial court correctly charged the jury pursuant to LSA-C.Cr.P. art. 804 A(2).
Briefing this assignment, the defense argues also that the state failed to negate the assertion by Simms that the homicide was perpetrated in self defense.[2] This argument is raised again in a portion of appellant's assignment of error number 6 relative to the testimony of the state's pathologist.
In this regard, appellant alleges that the victim's actions and size were such as to place him in fear of bodily harm and the state did not bear its burden of proof to negate this assertion. Appellant further asserts that the testimony of the state's pathologist, Dr. Hunt, testified in an indefinite fashion about the powder stipling.
Where a defendant in a homicide prosecution asserts that he acted in self defense, the state bears the burden of establishing beyond a reasonable doubt that the homicide was not perpetrated in self defense. State v. Brown, 414 So.2d 726, 728 (La.1982).
In State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983), the court stated:
"It is well-settled that the evidence is sufficient to support the conviction when any rational trier of fact, in viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, *775 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact-finder to weigh the respective credibilities of the witnesses, and this court will not second-guess the credibility determinations of the trier of fact beyond our sufficiency evaluations under the Jackson standard of review. See State v. Richardson, 425 So.2d 1228 (La. 1983)."
Thus, the jury's decision to disbelieve the crime was committed in self-defense is not a proper subject for appellate review if the state's evidence is sufficient overall under the Jackson standard to support the conviction. The testimony of the eyewitnesses, elucidated above, is to the effect that the victim's actions toward appellant were neither aggressive nor threatening, nor was appellant precluded from driving away from the scene.
In regard to the pathologist's testimony, Dr. Hunt admitted he was only able to place the distance at which the weapon had been fired as between six inches and four feet and admitted that if he could fire the weapon with the same type of ammunition he could pinpoint it to a matter of fractions of an inch but he had made no such tests. While appellant attempts to analogize these factors with the newspaper accounts in the Aaron Mintz trial in which tests that should have been routine were never performed, he fails to elaborate on how the pathologist's testimony affected the state's case. Nor does the defense explain how the results of any further testing would tend to exculpate the defendant.
It was the testimony of all the witnesses to the homicide that the defendant and the victim were only a short distance away from each other at the time of the shooting. The testimony of the coroner confirms the eyewitnesses' reports.
After our review of the evidence and applying the Jackson standard thereto, it is the conclusion of this court that the State has borne its burden of proof in establishing beyond a reasonable doubt that the homicide was not perpetrated in self defense.
As assignments of error 2, 4 and 5 address the correctness of the trial court's ruling on the motion(s) for new trial filed by the defense, they are herein consolidated.
LSA-C.Cr.P. art. 851 sets forth the criteria for the granting of a new trial. It provides:
"The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
"The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right."
A motion for new trial was filed on the defendant's behalf by his trial counsel on September 16, 1983 on the basis that the verdict was contrary to the law and evidence.
Subsequent to the filing of the motion, the appellant appearing pro se, supplemented *776 the motion for new trial charging ineffective assistance of counsel.
The thrust of the defense case at the motion hearing was threefold.
(1) To establish that prosecutorial misconduct developed a prejudicial atmosphere at trial which contributed to a guilty verdict.
(2) To establish John Simms's acceptance of a seven year plea bargain offer which was withdrawn by the state and to establish that such withdrawal was arbitrary.
(3) To establish that the defendant's trial counsel was ineffective.

Prosecutorial misconduct
Under the portion of the brief entitled "Overreaching by the state", the defense cites the court to numerous and allegedly irrelevant and improper questions by the prosecution, prejudicial remarks by witnesses or actions by the prosecution.
In this respect, we find from the record that the portions of the transcript complained of herein involved (1) questions unobjected to; (2) objections lodged which were sustained by the trial court or not further pursued by the state; (3) remarks made by a witness for which a mistrial was denied; (4) an objection related to a witness's testimony alleged to be an inculpatory statement made by defendant; and (5) the fact that the state failed to produce the minor son of Bonnie Warren for testimony at trial.
In State v. Jackson, 80 So.2d 105 (La. 1955) the obligations of a prosecutor were set forth as follows:
"It is, of course, the duty of the district attorney to prosecute the State's case with perseverance and energy and to use every lawful means to bring about a just conviction. It is also his duty, however, to see that no conviction is obtained except in strict conformity with the law, and that the accused is not deprived of any constitutional rights or privileges. Moreover, counsel for the State must at all times try to conduct the prosecution in such a manner as to avoid unnecessary errors in the trial." Jackson, supra, at 108-109.
The court further observed:
"In many instances defendants who are guilty of the crimes with which they are charged are granted new trials by this court because prosecuting officials were too anxious to secure a conviction and committed unnecessary errors which had the effect of depriving defendants of their constitutional and statutory rights." Jackson, supra, at 109.
In State v. Passman, 345 So.2d 874 (La. 1977), the Louisiana Supreme Court expressed approval of the ABA Standards Relating to the Prosecution Function (1971) to guide "prosecutors as officers of the court in regulating their own conduct." The following portions of the standards are excerpted from Passman, supra at 882 and 883, N. 2 and 3.
2. The ABA Standards Relating to the Prosecution Function, Section 5.2:
"(a) The prosecutor should support the authority of the court and the dignity of the trial courtroom by strict adherence to the rules of decorum and by manifesting an attitude of professional respect toward the defendants, jurors and others in the courtroom.
"(b) When court is in session the prosecutor should address the court, not opposing counsel, on all matters relating to the case.
"(c) It is unprofessional conduct for a prosecutor to engage in behavior or tactics purposefully calculated to irritate or annoy the court or opposing counsel.
"(d) A prosecutor should comply promptly with all orders and directives of the court, but he has a duty to have the record reflect adverse rulings or judicial conduct which he considers prejudicial. He has a right to make respectful requests for reconsideration of adverse rulings.
"(e) A prosecutor should be punctual in all court appearances.
"(f) Prosecutors should take leadership in developing, with the cooperation *777 of the courts and the bar, a code of decorum and professional etiquette for courtroom conduct."
3. The ABA Standards Relating to the Prosecution Function, Section 5.7(a)
"(a) The interrogation of all witnesses should be conducted fairly, objectively and with due regard for the dignity and legitimate privacy of the witness, and without seeking to intimidate or humiliate the witness unnecessarily. Proper cross-examination can be conducted without violating rules of decorum." (Emphasis added)
In the present case, the transcript reveals that the prosecutor acted within the appropriate boundaries throughout the trial. He responded affirmatively to adverse rulings and complied with the directives of the court. He questioned witnesses with dignity and decorum and his argument was within the permissible scope of LSA-C. Cr.P. art. 774. There appears from the questioning no deliberate attempt by the prosecutor to prejudice the defendant so as to deprive him of a fair trial. It is further noted that no admonishment to either the form, or content of the question, was ever requested by the defense so as to cure what is now alleged to be trial error. See Passman, supra, at 882. Thus we find no prosecutorial misconduct, nor do we find that the errors complained of demonstrate prejudicial error.

Withdrawal of Plea Bargain Agreement
The defense next argues that the state arbitrarily refused a plea bargain agreement which had been accepted by Simms, and it was error for the trial judge not to order either a new trial or enforcement of the plea bargain agreement.
The matter regarding plea bargain offers was presented to the trial court on February 27, 1984, in connection with the motion for new trial.
Testimony in this regard was presented by Randal Lewis, defendant's trial counsel, Greg Champagne, the state's trial counsel, defendant and defendant's nephew, Tim Jones.
Messrs. Lewis and Champagne testified that no agreement was reached with defendant. They both stated that it was their understanding that defendant had rejected offers made to him prior to their respective involvement in the case. Subsequent to the involvement of Lewis and Champagne, defendant and the state were unable to reach an agreement due to the fact that defendant wanted to serve only six months to a year in parish prison.
The testimony of John Simms and his nephew, Tim Jones, was to the effect that Simms agreed to a seven-year plea bargain one week before trial. Defendant further asserted that his attorney failed to get back to him on the matter and that during trial, after inquiring about the seven-year plea bargain, his attorney told him that the state and defense were still negotiating. Defendant denied rejecting previous offers except an offer for an eighteen year sentence made by the district attorney's office in September, 1982.
The trial judge asked the defendant why he proceeded to trial if in fact he had accepted a plea bargain of seven years. The defendant responded that every time he asked his attorney about the seven years he said he accepted, Mr. Lewis told him he was waiting for Mr. Champagne to reply.
After the hearing, the trial judge resolved the conflicting evidence on the plea bargaining issue against the defendant.
Factual determinations and evaluations of credibility of witnesses are matters within the trial judge's discretion and should not be disturbed absent evidence of an abuse of that discretion. State v. McSpaddin, 341 So.2d 868 (La.1977); State v. Cobbs, 350 So.2d 168 (La.1977). We find no abuse of discretion in this case.
Furthermore, even assuming that a plea bargain had been reached, we find no error. The state is free to withdraw a plea agreement up to the time the plea is entered, absent a showing of detrimental reliance prejudicial to the substantive rights of the accused, or evidence of devious practice *778 by the government. State v. Caminita, 411 So.2d 13 (La.1982), cert. den. 459 U.S. 976, 103 S.Ct. 314, 74 L.Ed.2d 291.
In the present case, there is no showing that the defendant relied to his detriment on the understanding that a plea bargain had been confected nor is there evidence of devious practices by the state. Accordingly, we find no error in the trial court's denial of a new trial or in its refusal to enforce the alleged plea bargain agreement.

Ineffective Counsel
The defense next argues that the trial judge erred in denying Simms a new trial based on his allegations of ineffective counsel during the trial proceedings.[3]
The test for evaluating the competency of trial counsel was most recently articulated by the United States Supreme Court in Strickland v. Washington, ___ U.S. ___, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The court held:
"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."
In evaluating the performance of counsel, the "inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Strickland, supra, at 2065.
In making the determination of whether the specified errors resulted in an unreliable verdict, the inquiry must be directed to whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra, at 2068.
By brief the defense complains that trial counsel should have continuously objected to the prosecutor's questions regarding his relationship with Bonnie Warren and their children and her relationship with the victim.
On several occasions, the defense counsel failed to object to questions posed by assistant district attorney which were arguably irrelevant to the prosecution. However, Simms's trial counsel explained that his failure to object was a deliberate trial tactic based upon his belief that numerous objections tend to prejudice the jury against the party lodging them.
The time and manner of making objections is part of the trial strategy decision-making of the trial attorney. Further, a reading of the record indicates that Mr. Lewis prepared numerous motions, contacted several witnesses, met on many occasions with the defendant, attempted to execute *779 plea bargains on several occasions, familiarized himself with all of the evidence and testimony of defense and state witnesses, and researched the applicable law on the defendant's behalf.
Even assuming arguendo that the failure of a trial counsel to object to every question deemed improper constitutes error, the defense has not established that such an error was of so serious a nature to make the result of the proceedings unreliable. Strickland, supra.[4]
It is noted that counsel's failure to object precludes those issues from appellate review. However, we find from the record that the responses to the questions deemed improper by the defense in retrospect failed to produce such prejudicial information so as to warrant a new trial.

Assignment of Error No. 3
The trial judge erred in failing to give the jury additional instructions when it asked for additional instructions on "guilty" and "guilty of manslaughter."
By this assignment, the defense argues the trial judge acted improperly upon the jury's request for additional instructions during their deliberations.
In a written communication to the judge, the jury requested a copy of the instructions given to the jury by the judge. Underneath the request, the jury foreman wrote, "guilty of manslaughter." Unsure of the meaning in this regard, the judge brought the jury back and informed them that Louisiana law prohibited written instructions to be taken into the jury room. He stated however that, if there were specific questions, the jury should reduce the question(s) to writing so that he could orally give the appropriate instructions.
Following the request by the court to reduce their request to writing, the jury did not return to the courtroom until a verdict had been reached.
Initially, it is noted that no contemporaneous objection was lodged to the court's procedure. As noted previously, LSA-C. Cr.P. art. 841 provides, in pertinent part, "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence."
Nevertheless, it does not appear the trial judge erred.
Louisiana Code of Criminal Procedure Article 808 provides:
"If the jury or any member thereof, after having retired to deliberate upon the verdict, desires further charges, the officer in charge shall bring the jury into the courtroom, and the court shall in the presence of the defendant, his counsel, and the district attorney, further charge the jury. The further charge may be verbal."
The current State of Louisiana law continues to prohibit the court's written charge from being considered by the jury during deliberations. State v. Yoxtheimer, 301 So.2d 318 (La.1974).
As the court followed the applicable statutory and jurisprudential authority, we find the assignment to be without merit.
Appellant's final assignment of error states that the court should have rendered a new trial because of all the foregoing errors and the errors that appear here.
By this assignment, the appellant presents three additional trial occurrences which appellant argues mandate the granting of a new trial "in the interest of justice."
(1) Appellant cites the record to show that of 153 persons on the jury venire, only 56 were present, or 37.33 percent. Appellant complains that the court said that all excuses would be included in the record, but that no excuses are in the record. Thus appellant alleges that he cannot prove that he was prejudiced by failure *780 of only 37 percent of the jurors to appear, and because the excuses are not in the record or unavailable, appellant argues that he will never be able to prove prejudice. He then concludes that the court should order the record to be supplemented to include juror excuses.
In State v. Dallao, 187 La. 392, 175 So. 4, 11 (1937) U.S. cert. denied 302 U.S. 635, 58 S.Ct. 51, 82 L.Ed. 494 (1937), the Louisiana Supreme Court set forth the controlling principles regarding challenge to the jury venire.
"Under article 345 of the Code of Criminal Procedure, it is within the discretion of the trial judge to excuse for cause jurors of the regular venire. It is to be expected that in every criminal prosecution the trial judge may be called upon to exercise this discretionary right. This is particularly true in cases of great public interest,.... The right, when exercised by the trial judge, will not be interfered with on appeal unless it clearly appears that it has been abused or that the defendant has been prejudiced thereby. State v. Ardoin, 136 La. 1085, 1086, 68 So. 133; State v. Gould, 155 La. 639, 99 So. 490.
* * * * * *
"When a venire has been regularly drawn, the nonattendance of unavailable or excused jurors, without fraud or collusion and without material injury to the accused, is not sufficient cause to quash the panel. State v. Gould, 155 La. 639, 99 So. 490; State v. Dozier, 33 La.Ann. 1362."
In State v. Bluain, 315 So.2d 749 (La. 1975), the Supreme Court rejected the defendant's claim that the absence of 32 percent of the jury panel denied him an opportunity to select or be tried by a cross-section of the community, stating:
"Defendant in the instant case makes no showing that any special class was systematically excluded or that he was deprived of a trial before an unbiased jury or that he was compelled to accept an obnoxious juror.
"We rejected a similar contention in State v. Stephenson, La., 291 So.2d 767 (1974), stating:
`The accused has no right to a trial by any particular jury or juror, but only to a trial by a competent, impartial jury.'"
Likewise, in the present case, the defense makes no showing that he was deprived of a trial before an unbiased jury or was compelled to accept an obnoxious juror. Rather, the record reflects that the defense utilized only eight of the twelve peremptory challenges permitted by law. LSA-C. Cr.P. art. 799 (prior to 1983 amendment). Therefore we find no error related to the jury venire.
(2) The defense alleges that the trial court erred in not granting an investigator to aid the defense in the preparation of its case.
In State v. Madison, 345 So.2d 485, 490 (La.1977), the Louisiana Supreme Court stated that:
"The right to a private investigator may in many cases be an adjunct to the right to counsel: furnishing counsel to the indigent defendant is not enough if counsel cannot secure information on which to construct a defense. See, United States v. Johnson, 238 F.2d 565, 572 (2d Cir.1956) (dissenting opinion of Frank, J.); * * * * Therefore when an indigent defendant shows that his attorney is unable to obtain existing evidence crucial to the defense, the means to obtain it should be provided for him, and if the indigent defender system cannot defray the expense, the State ought to supply the funds."
The motion filed by the defense counsel demonstrated no special circumstances warranting the appointment of an investigator. Although the defense now argues that special circumstances existed, no such showing was made in the motion and accordingly *781 it was properly denied. State v. Walker, 344 So.2d 990 (La.1977).
(3) The defense next argues that the responsive verdict scheme takes away jury discretion to arrive at a fair result and states that aggravated battery and negligent homicide ought to be responsive verdicts to a second degree murder charge.[5]
Initially, the record does not reflect any objection to the court's jury charge, nor does it reflect that the defense requested the special charges.
LSA-C.Cr.P. art. 803 provides that under the provisions of Article 814 or 815, the court shall charge the jury as to the law applicable to each offense when the offense in the indictment includes other offenses of which the accused could be found guilty.
The record herein shows that the court complied with its statutory obligation and instructed the jury as to all offenses designated responsive by LSA-C.Cr.P. art. 814.
Furthermore, the defendant was not prejudiced by the exclusion. If the jury had concluded that the offense committed by the defendant was either negligent homicide or aggravated battery, under the responsive verdicts given the jury, a "not guilty" verdict would have been the one returned. Further he was convicted of the precise crime charged and it would be anomalous for him to allege he was prejudiced in this regard. State v. Anderson, 440 So.2d 205 (La.App. 3d Cir.1983), writs denied 444 So.2d 1241 (La.1984); State v. Prestridge, 399 So.2d 564 (La.1981). See also State v. Nolen, 461 So.2d 1073 (La. App. 5th Cir.1984).
Consequently we find no error in the responsive verdicts provided to the jury by the trial court.
Therefore, after a review of the law and evidence and for the foregoing reasons, the conviction of appellant John Simms is hereby affirmed.
AFFIRMED.
NOTES
[*] Defense presented assignments of error in the record and the brief which differed in language, but not in substance except for one assignment in the record. Thus, the assignments herein listed are from the appellate brief. The record assignment # 2 which relates to the trial judge's failure to instruct properly on self-defense was neither raised nor argued in the appellate brief and is hereby deemed abandoned pursuant to Uniform Rules-Court of Appeal, Rule 2-12.4. State v. Smith, 452 So.2d 251 (La.App. 5th Cir. 1984); State v. Becnel, 441 So.2d 339 (La.App. 5th Cir.1983).
[1] The relevant Louisiana Criminal Code of Procedural Articles on this issue are Articles 802 and 804.

Article 802 reads as follows:
The court shall charge the jury:
(1) As to the law applicable to the case;
(2) That the jury is the judge of the law and of the facts on the question of guilt or innocence, but that it has the duty to accept and to apply the law as given by the court; and
(3) That the jury alone shall determine the weight and credibility of the evidence.
Article 804 provides:
(A) In all cases the court shall charge the jury that:
(1) A person accused of crime is presumed by law to be innocent until each element of the crime, necessary to constitute his guilt is proven beyond a reasonable doubt;
(2) It is the duty of the jury, in considering the evidence and in applying to that evidence the law as given by the court, to give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence in the case; and
(3) It is the duty of the jury if not convinced of the guilt of a defendant beyond a reasonable doubt, to find him not guilty.
The court may, but is not required, to define "the presumption of innocence" or "reasonable doubt" or give any other or further charge upon the same than that contained in this article.
B. When there are several grades of an offense contained in a single count, the court shall charge the jury as to each grade of which the defendant could be found guilty. The court shall in that case also charge the jury that if it has a reasonable doubt as to any or all grades of the offense charged it shall find the defendant not guilty of that grade, or all grades of the offense, as the case may be.
[2] LSA-R.S. 14:20 provided at the time of the offense:

A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger; or
(2) When committed, for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm, by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention. The circumstances must be sufficient to excite the fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing.
(3) When committed against a person whom one reasonably believes to be likely to use any unlawful force against a person present in a dwelling or a place of business while committing or attempting to commit a burglary of such dwelling or business. The homicide shall be justifiable even though the person does not retreat from the encounter.
[3] The law is well settled that allegations of ineffective assistance of counsel are more properly raised by an application for post-conviction relief than by an assignment of error presented on the direct appeal of the case. See State v. Seiss, 428 So.2d 444 (La.1983); State v. Tauzier, 397 So.2d 494 (La.1981); State v. Williamson, 389 So.2d 1328 (La.1980); State v. Malveaux, 371 So.2d 820 (La.1979). See also State v. Tasker, 448 So.2d 1311 (La.App. 1st Cir.1984). However, the Supreme Court has addressed the issue on direct appeal in several cases where "the record discloses [the] evidence needed to decide the issue" noting that such a procedure was "in the interest of judicial economy...." State v. Ratcliff, 416 So.2d 528, 530 (La.1982); State v. Seiss, supra.

In the present case, as in Seiss, supra, the issue was fully litigated in the district court and the record presented for review is sufficient to address the issue.
[4] LSA-C.Cr.P. art. 851 provides in pertinent part:

"The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded."
[5] The responsive verdicts for second degree murder under LSA-C.Cr.P. art. 814 are: Guilty, guilty of manslaughter and not guilty.